UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-cv-61666-ALTMAN

**DON SMITH,** *et al.*,

    *Appellants*,

*v.*

**SONYA S. SLOTT**,

    *Appellee*.

_____/

## ORDER AFFIRMING BANKRUPTCY COURT

Before us once again is an appeal from *In re: No Rust Rebar, Inc.*, Case No. 21-12188-PDR (the "Bankruptcy Case").[1] The debtor, No Rust Rebar Inc. ("No Rust"), is owned and operated by Don Smith. He lost control as the debtor in possession when the bankruptcy was converted to a liquidation proceeding and a Chapter 7 Trustee, Sonya Slott, was appointed. Soon after that, the Trustee moved to "substantively consolidate" the debtor with four other entities Smith owned and controlled: (1) Raw Materials Corp ("RMC"); (2) Raw Energy Materials, Corp. ("REM"); (3) Global Energy Sciences, LLC ("GES"); and (4) Raw, LLC ("Raw") (together, the "Smith Entities").[2] After substantial briefing and oral argument, the Bankruptcy Court issued an order consolidating the entities. Smith and the

---

[1] We refer to the docket in the Bankruptcy Case as "Bankr. ECF No." In a prior appeal, we affirmed an order from the Bankruptcy Court that approved a settlement between the debtor and a creditor. *See generally* Order Affirming Bankruptcy Court [ECF No. 24].

[2] These entities are also referred to in the Bankruptcy Case as the "Targets," the "Target Companies," and the "Target Entities."

Smith Entities separately appealed that order,[3] and we consolidated the appeals under this case number.[4]

Our Appellants' objections to the substantive consolidation boil down to four arguments.[5] *First*, they claim that Federal Rule of Bankruptcy Procedure 7001 permits substantive consolidation *only* through an adversary proceeding and that the Bankruptcy Court's decision to consolidate in our case by motion violated their due-process rights.[6] *Second*, the Appellants argue that they were non-parties to the bankruptcy proceedings who were never served with a summons—and that the Bankruptcy Court thus lacked personal jurisdiction over them. *Third*, they contend that the Bankruptcy Court lacked authority to enter a final judgment on the question of substantive consolidation—and that, at most, it should have submitted a report and recommendation to the district court. *Finally*, the

---

[3] The Smith Entities' appeal was styled *Raw Materials, et al. v. Slott*, No. 23-cv-61340-RKA (the "Entities Appeal"). Smith's appeal was styled *Smith v. Slott*, No. 23-cv-61423-RKA (the "Smith Appeal"). Some of the relevant filings are in only one or another of those cases. So, when we cite to documents from those cases, we'll identify the case we're citing to—*e.g.*, [ECF No. #] (Smith Appeal) or [ECF No. #] (Entities Appeal).

[4] Both Smith and the Trustee adopted their briefing from the Entities Appeal. *See* Appellant's Adoption of Initial Brief and Appendix in Related Appeal [ECF No. 15] (Smith Appeal); *see also* Appellee's Adoption of Appellee's Response Brief Filed in Related Appeal [ECF No. 16] (Smith Appeal). We thus consolidated those appeals, which involve identical questions of law and fact, into this case (22-cv-61666-RKA). *See* Order of Consolidation [ECF No. 16].

[5] The Appellants actually list eighteen separate questions as live issues in this appeal. *See* Initial Br. [ECF No. 13] (Entities Appeal) at 4–5 (listing the "Issues Presented"). But the Appellants didn't brief many of the listed issues and have thus forfeited any challenges they might have advanced with respect to those issues. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (collecting cases for the proposition that "an appellant waives a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority"); *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue waives it."), *overruled in part on other grounds by United States v. Durham*, 795 F.3d 1329, 1331 (11th Cir. 2015) (en banc); *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented . . . are deemed waived."). We'll therefore address only the four arguments the Appellants *did* brief.

[6] Adversary proceedings "are governed by special procedural rules[ ] and based on conflicting claims usually between the debtor (or the trustee) and a creditor or other interested party[.]" *Law Sols. of Chi. LLC v. Corbett*, 971 F.3d 1299, 1307 (11th Cir. 2020) (cleaned up). "Although they are generally viewed as stand-alone lawsuits, they are usually initiated . . . by filing a complaint in the same court that is handling the bankruptcy petition." *Ibid.*

Appellants claim that the Bankruptcy Court misapplied the law of collateral estoppel by entering a consolidation order based on factual findings from a *prior* order that involved a *different* legal issue and *different* parties.

Having carefully examined the briefs and the record—and for the reasons we outline below—we now **AFFIRM** the Bankruptcy Court's Order in full.[7]

## THE FACTS[8]

### I.      Smith Owns and Controls "the Smith Entities"

Don Smith is "the president of No Rust Rebar, Inc.," the debtor in this case. *See* Chapter 11 Subchapter V Voluntary Petition ("Chapter 11 Petition") [Bankr. ECF No. 1] at 6. Smith founded No Rust in 2015 "to manufacture and sell basalt-based reinforcing bars" that "do not rust." *See* Debtor's Plan of Reorganization or Liquidation ("Debtor's Plan") [Bankr. ECF No. 56] at 1. Smith is also the "sole and managing member" of GES and Raw and the "sole officer and Director" of RMC and REM. *See* Appellants' Designation of Issues and Record on Appeal from the Order Granting Trustee's Motion to Substantively Consolidate ECF 441 ("Appellants' Designation of Issues") [ECF No. 9-1] at 1 (Entities Appeal).

The details of No Rust's long road to bankruptcy aren't germane to this appeal—so we'll summarize them only briefly here. After a series of financial hardships and litigation over property

---

[7] Neither party has requested oral argument. And, after carefully reviewing the briefs and the record, we agree that any such argument would have been unnecessary because the parties have adequately presented the facts and the legal arguments in their papers. *See* FED. R. BANKR. P. 8019(b)(3) ("Oral argument must be allowed in every case unless the district judge . . . examine[s] the brief and record and determine[s] that oral argument is unnecessary because the facts and legal arguments are adequately presented in the briefs and record[.]").

[8] These facts are taken from three sources: (1) the Bankruptcy Case filings ["Bankr. ECF"]; (2) the Bankruptcy Case record, *see* Transmittal to District Court [ECF No. 9] (Entities Appeal); and (3) the Appellants' Appendix, *see* Appellants' Appendix [ECF No. 12] (Entities Appeal). For the sake of clarity, we cite primarily to the Bankruptcy Case filings, even where a document *also* appears in the Bankruptcy Case record or the Appellants' Appendix.

ownership, No Rust filed a voluntary petition to reorganize under Subchapter V of Chapter 11 of the

Bankruptcy Code, 11 U.S.C. §§ 101–1532 (the "Code"). *See* Order Affirming Bankruptcy Court [ECF

No. 24] at 1–3. Smith continued running No Rust as the "debtor in possession," which was "allowed

to remain in full operation of its business and to manage its property." Order Authorizing Debtor in

Possession to Continue Operation of its Business [Bankr. ECF No. 8] at 1. But Smith's control over

the estate was challenged by a creditor, Green Tech LLC, which moved *either* to have "the Subchapter

V Trustee take possession of the records and maintain the business operations of Debtor," Motion

for Removal of Debtor as Debtor in Possession ("Motion for Removal") [Bankr. ECF No. 70] at 3,

*or* to convert the case to a Chapter 7 liquidation and have a trustee manage the estate, *see* Motion to

Convert to Chapter 7 ("Motion to Convert") [Bankr. ECF No. 116] at 6 ("A Chapter 7 trustee is

needed to collect the assets and make distributions according to the Bankruptcy Code.").

      Green Tech was—to put it mildly—concerned about the way No Rust, through Smith, was

handling the estate. So, for instance, Green Tech suggested that No Rust had subjected the estate to

"Fraud," "Dishonesty," "Multiple, Incurable Conflicts of Interest," and "Gross Mismanagement." *See*

Motion for Removal at 1–2. Initially, the Bankruptcy Court ordered No Rust to file amended monthly

operating reports after "it seem[ed] that many—if not all—of the reports fail[ed] to provide all the

required financial information." Order Sua Sponte Requiring the Debtor to File Amended Monthly

Operating Reports [Bankr. ECF No. 77] at 1. But (Green Tech argued) these amended reports "still

d[id] not comply with reporting requirements and the information provided [was] grossly deficient."

Motion to Convert at 1. Green Tech also accused Smith of "continuing to conceal the assets

transferred from and monies owed to the Debtor by [the Smith Entities]," who "share[d] not only the

same ownership, management, and principal place of business, but also bank accounts." *Id.* at 2.

## II.   The Bankruptcy Court Finds that the Smith Entities Flaunted Corporate Structures and Mismanaged the Estate

The Bankruptcy Court held four days of evidentiary hearings on these (and other related) motions. *See* Order Converting Case to Chapter 7 ("Conversion Order") [Bankr. ECF No. 193] at 11 (noting that the court held evidentiary hearings on December 8, 2021, December 21, 2021, January 4, 2022, and January 10, 2022). It then agreed to convert the case to a Chapter 7 liquidation. *See id.* at 32 ("This case is CONVERTED to a Chapter 7 case.").

In its Conversion Order, the Bankruptcy Court concluded that Smith had commingled estate assets and liabilities with those of his other companies in a giant asset soup he called "the Family." *See id.* at 19 ("[T]he Family appears to have been a group of commingled entities whose responsibilities, assets, and liabilities were constantly shuffled to fit Smith's needs or whims."). Among other things, Smith used GES "to hold his intellectual property," some of which "No Rust paid the bills for." *Id.* at 5. He also caused No Rust to "transfer[ ] a patent to GES for no consideration." *Ibid.* And, although No Rust was "obligated to pay GES \$200/day (\$73,000 annually) for a license to produce basalt rebar," Smith had never enforced that obligation. *Ibid.*

Smith acknowledged that "the Family failed to maintain corporate formalities largely because the Family included all closely held companies that he personally controlled" and because "he lacked the clerical help to separate the Family's assets and liabilities." *Id.* at 20. The result was a "failure to maintain separate books and records amongst the various entities," which "ultimately caused the commingling of many assets." *Ibid.* The way Smith, for example, accounted for the debtor was far from methodical: "[H]e simply walked around the Property, which house[d] not just the Family but other entities not owned by Smith, and just picked [which] assets to include." *Ibid.* He also "commingled No Rust's assets . . . through his unusual and improper practice of listing the formal name of one entity as the d/b/a or fictitious name of another." *Ibid.* This was done, in essence, "so he could, in his sole discretion, quickly and conveniently commingle assets in No Rust's name with

5

those in RMC's name." *Id.* at 21. Smith protested that "he only deposited No Rust's checks into RMC's accounts where appropriate," but the Bankruptcy Court didn't buy this explanation. *See ibid.* ("Smith's mere statement on the record that his actions were always appropriate, especially in the absence of any specifics or legitimate business justifications for the scheme, is not sufficiently credible to eliminate the very real possibility that RMC's bank account contains recoverable property of the estate of unknown value.").

There were "similar issues" with what was called the "PayMeOn Deal," in which, pre-petition, Smith "used various entities to complete a deal with . . . a publicly traded company interested in the sale of Smith's basalt rebar." *Id.* at 5–6. The PayMeOn Deal blended the Smith Entities' assets and left No Rust on the losing end. *See id.* at 6 ("In short, in exchange for No Rust's assets and No Rust losing its right to sell basalt rebar in Florida and the Caribbean, RMC received millions of dollars, Raw received millions of shares in a publicly traded company, and No Rust received nothing."). After No Rust filed for bankruptcy, Raw "sold the PayMeOn stock for $1.2 million as part of a settlement agreement," in which "No Rust received nothing from the sale of the stock or as part of the settlement agreement." *Id.* at 22. What's worse, "[t]he funds from the sale were provided to Smith personally." *Ibid.* Although No Rust claimed that "there is nothing to see here," because it "lack[ed] an interest in the stock or in the proceeds," the Bankruptcy Court rejected "Smith's conclusory testimony." *Ibid.*

For these reasons (among many others not relevant here), the Bankruptcy Court converted the case to a Chapter 7 proceeding and appointed a trustee to administer "all records and property of the estate[.]" *Id.* at 32.

### III.    The Smith Entities are Consolidated

After her appointment as the Chapter 7 Trustee, *see* Notice of Appointment of Trustee [Bankr. ECF No. 195], Sonya Slott moved the Bankruptcy Court for an order "substantively consolidating RMC, REM, GES, and RAW . . . and their assets and liabilities into th[e] Estate[.]" Motion to

Substantively Consolidate Raw Materials Corp., Raw Energy Materials, Corp., Global Energy Sciences, LLC, and Raw, LLC into this Estate ("Consolidation Motion") [Bankr. ECF No. 385] at 1. She argued that the Bankruptcy Court had the authority to do this because "substantial identi[t]y exist[ed] between the Debtor and the proposed Consolidated Debtors," *id.* at 10, and because consolidation would produce significant benefits like "streamlin[ing] liquidation of assets and distribution to creditors" and "greatly reduc[ing]" costs to the estate, *id.* at 12. And (she continued) the Conversion Order had already determined that she had satisfied the necessary elements of the consolidation she was now seeking. *See id.* at 5–6 (noting that "the voluminous Conclusions of Law contained in the Conversion Order . . . . fully and unambiguously support the relief sought by the Trustee through this Motion"). Smith filed a two-page response in opposition, which listed five objections but included no caselaw or argument. *See generally* Opposition to Motion to Substantively Consolidate Raw Materials Corp., Raw Energy Materials, Corp., Global Energy Sciences, LLC and Raw, LLC into this Estate [ECF 385] ("Response in Opp. to Consolidation") [Bankr. ECF No. 391].

The matter was set for a hearing, *see* Notice of Hearing [Bankr. ECF No. 388], at which the court asked the Smith Entities to explain the basis for their objection. *See* March 2, 2023, Hearing Transcript [ECF No. 12-6] (Entities Appeal) at 20[9]:2–5 ("The Court: All right. Mr. Gleason. While I appreciate the brevity of your objection, I need more. Tell me about these issues, and what you want to emphasize, and let's talk about it."). Counsel explained that his filing was so brief because he had to submit it on the same day he was retained. *See id.* at 39:11–12 ("Mr. Gleason: Not that it is ever an excuse, but the objection was filed on the day I was hired"). He couldn't have represented the Smith Entities any earlier, he said, because of the lengthy process of withdrawing from his representation of No Rust (now under the Trustee's control). *See id.* at 39:23–40:1 ("Mr. Gleason: Judge, it's very

---

[9] We refer here *not* to the page number of the transcript itself, *but* to the page in the Bankruptcy Court's record where the transcript appears.

complicated to go through, as your Honor observed at the hearing on my motion to withdraw as counsel, you have to go through the Florida [B]ar rules, each one."). After some discussion on each party's position, the Bankruptcy Court said that it would need supplemental briefing. *See id.* at 47:15–25 ("The Court: . . . . So, Mr. Gleason, how much time would you need[?] . . . . I need more from you if you're going to have any chance of being successful here . . . . I need to understand the legal issues."); *id.* at 52:4–19 ("The Court [to Trustee's counsel, Mr. Malnik]: . . . . [H]ow long would it take for you to do an entity[-]by[-]entity analysis, or provide what you are arguing, entity by entity, in terms of what's supported by the conversion order?"). The hearing was then continued, *see* Order Continuing Hearing on Trustee's Motion to Substantively Consolidate Raw Materials Corp., Raw Energy Materials Corp., Global Energy Sciences, LLC, and Raw, LLC into this Estate [Bankr. ECF No. 392], and the parties timely filed their respective supplemental briefs.

In her brief, the Trustee set out, in meticulous detail, her view that the Bankruptcy Court's findings in its Conversion Order essentially applied with equal force to her consolidation request. *See generally* Supplement to Trustee's Motion to Substantively Consolidate Raw Materials Corp., Raw Energy Materials, Corp., Global Energy Sciences, LLC, and Raw, LLC into this Estate [Bankr. ECF No. 394]. In saying so, the Trustee launched into an entity-by-entity analysis, explaining her position that, as to each entity, the Conversion Order's *factual* findings satisfied the *legal* elements of the consolidation test. *See generally ibid.*[10] The Smith Entities' supplemental briefing, by contrast, *didn't* present a competing analysis of the consolidation factors. *See generally* Response to Trustee's Supplement [DE 394] and Detailed Opposition to Motion to Substantively Consolidate [ECF 385] ("Opp. to Supp. Consolidation Br.") [Bankr. ECF No. 395]. Instead, the Entities raised procedural objections rooted in the Federal Rules of Bankruptcy Procedure, the Due Process Clause of the Fifth

---

[10] This fact/law distinction will become very important later.

Amendment to the U.S. Constitution, the Federal Rules of Civil Procedure, and the doctrine of collateral estoppel. The Trustee filed a timely reply. *See* Reply to Trustee's Motion to Substantively Consolidate Raw Materials Corp., Raw Energy Materials, Corp., Global Energy Sciences, LLC, and Raw, LLC Into This Estate [Bankr. ECF No. 406].

At the continued hearing, the Trustee largely rested on her briefing—except to highlight the Smith Entities' failure to contest her view on the application of the consolidation factors. *See* April 25, 2023, Hearing Transcript [ECF No. 12-7] at 6[11]:2–19. ("Mr. Malnik: . . . . And as your Honor has already had a four-day trial on this matter, I will, for the sake of brevity, not go into each of those additional factors, beside to note that the target entities have had a substantial opportunity to raise defenses to each of these elements, and throughout the pleadings have failed to do so."). The Bankruptcy Court spent most of the hearing trying to understand the Smith Entities' objections. Among other things, the Bankruptcy Court noted that, during the conversion proceedings, Smith had *already* testified about the matters the Smith Entities now wanted to revisit:

> The Court: . . . . So, my understanding of the argument is that at trial on a conversion issue, Mr. Smith, who would be the witness who would testify as to each of these target entities, and transactions between them, and how he is the owner and sole person in control of those entities, managed those entities, would be the same witness that you're suggesting could be called again to testify on the same point. So, how would the— what would change in an adversary [proceeding] from an evidentiary perspective?

*Id.* at 20:3–13. In response, the Smith Entities said that there "[were] errors in the Court's findings," *id.* at 21:16–17, and that they "w[ould] be contesting th[em]" because those mistakes "form the basis of the substantive consolidation," *id.* at 22:8–10. In response, the Trustee reiterated that the Bankruptcy Court had *already* "heard for four days from Mr. Smith on all of the[ ] issues" during the conversion proceedings, and she insisted that the Smith Entities were improperly asking "to change

---

[11] Here, too, we refer *not* to the page number of the transcript itself, *but* to the page in the Bankruptcy Court's record on which that transcript appears.

what [the Bankruptcy Court] already found." *Id.* at 28:8–21. At the end of the hearing, the Bankruptcy Court took the parties' arguments under advisement. *See id.* at 34:5–7 ("The Court: . . . . Anything else from either of you? And I'm going to take this under advisement.").

In a lengthy written decision, the Bankruptcy Court ultimately granted the Consolidation Motion. *See generally* Order Granting Trustee's Motion to Substantively Consolidate ("Consolidation Order") [Bankr. ECF No. 441]. The Bankruptcy Court explained that, under U.S. Supreme Court and Eleventh Circuit precedent, "[s]ubstantive consolidation can be applied to non-debtor third parties," *id.* at 13, and found that the applicable factors justified consolidation, *see id.* at 14–23. Plus (the court explained): "[D]espite being provided ample opportunity, the [Smith Entities] raised no substantive arguments in opposition to consolidation or to contest the applicability of the[se] . . . factors." *Id.* at 24. The Bankruptcy Court also rejected the Smith Entities' various procedural arguments. *See* Consolidation Order at 24–39. Smith and the Smith Entities timely appealed, and this Order follows.

## THE LAW

District courts have "jurisdiction to hear appeals from final judgments, orders, and decrees . . . of bankruptcy judges." *In re Charter Co.*, 778 F.2d 617, 621 (11th Cir. 1985) (quoting 28 U.S.C. § 158(a)). "In reviewing bankruptcy court judgments, a district court functions as an appellate court. It reviews the bankruptcy court's legal conclusions *de novo*, but must accept the bankruptcy court's factual findings unless they are clearly erroneous." *In re JLJ Inc.*, 988 F.2d 1112, 1116 (11th Cir. 1993); *see also In re Gaddy*, 851 F. App'x 996, 999 (11th Cir. 2021) ("A bankruptcy court abuses its discretion when it either misapplies the law or bases its decision on factual findings that are clearly erroneous."). "*De novo* review requires the court to make a judgment independent of the bankruptcy court's, without deference to that court's analysis and conclusions." *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1295 (11th Cir. 2001). And "[t]he bankruptcy court's findings of fact are not clearly erroneous unless, in light of

10

all the evidence, we are left with the definite and firm conviction that a mistake has been made." *In re Int'l Pharm. & Disc. II, Inc.*, 443 F.3d 767, 770 (11th Cir. 2005).

**ANALYSIS**

Bankruptcy courts have the authority—under their general equitable powers—to substantively consolidate a debtor with another entity. *See Eastgroup Props. v. S. Motel Ass'n, Ltd.*, 935 F.2d 245, 248 (11th Cir. 1991) ("While not specifically authorized by the bankruptcy code, bankruptcy courts have the power to order substantive consolidation by virtue of their general equitable powers."). Substantive consolidation entails bringing "all the assets of a group of entities into a single survivor," the debtor, from which creditors' claims can be satisfied. *In re Owens Corning*, 419 F.3d 195, 205 (3d Cir. 2005); *see also Eastgroup*, 935 F.2d at 248 (explaining that substantive consolidation "involves the pooling of the assets and liabilities of two or more related entities" and that "the liabilities of the entities involved are then satisfied from the common pool of assets created by consolidation"). The concept of substantive consolidation "begins with a commonsense deduction[:] Corporate disregard as a fault may lead to corporate disregard as a remedy." *In re Owens Corning*, 419 F.3d at 205. Because the entities are all, post-consolidation, treated as the "debtor," consolidation "usually results in . . . eliminating inter-company claims." *In re Augie/Restivo Baking Co., Ltd.*, 860 F.2d 515, 518 (2d Cir. 1988).

Our Appellants urge us to reverse the Consolidation Order for four reasons. *First*, they claim that "substantive consolidation must be sought by adversary proceeding" under Federal Rule of Bankruptcy Procedure 7001, *see* Initial Br. at 12, and that the Bankruptcy Court's decision to grant consolidation by motion violated their due-process rights, *see ibid.* ("The Bankruptcy Court took the Appellants' assets without due process inherent in adversary proceedings[.]"). *Second*, they argue that, because they weren't parties to the consolidation proceedings (and were never served with a summons), the Bankruptcy Court lacked personal jurisdiction over them. *See id.* at 10 (observing that the Appellants were "served only the functional equivalent of a badly-drafted complaint, without a

summons"). *Third*, they contend (without much explanation) that "the Bankruptcy Court lacked authority to enter a final order" under Article III, Section 1 of the U.S. Constitution. *Id.* at 11. *Fourth*, they say that there was "no identity of parties and no identity of issues" between the Conversion Order and the Consolidation Order, so the Bankruptcy Court shouldn't have used the Conversion Order as collateral estoppel against them in the consolidation proceedings. *Id.* at 13. We'll address—and reject—each argument in turn.

## I.        Substantive Consolidation Need Not Occur through Adversary Proceedings

Although this is admittedly a close call, the Eleventh Circuit has suggested (albeit in dicta) that a trustee *need not* seek substantive consolidation *only* through adversary proceedings. In *Eastgroup*, for instance, a Chapter 7 trustee "moved to consolidate substantively [ ] two bankruptcy estates." 935 F.2d at 247. After a hearing, where "the trustee presented evidence for substantive consolidation"— and at which "none of the [objecting creditors] presented independent evidence"—the bankruptcy court ordered consolidation. *Ibid.* The evidence at the hearing showed that the two debtors were "commonly owned"—and that they "shar[ed] [ ] office and personnel"—with "no effort . . . to allocate overhead between the two entities." *Id.* at 248. The objecting creditors appealed the bankruptcy court's order, "contend[ing] that the bankruptcy court erred in weighing the equities when it ordered substantive consolidation." *Ibid.*

The Eleventh Circuit recognized that, "[b]ecause the entities to be consolidated are likely to have different debt-to-asset ratios, consolidation almost invariably redistributes wealth among the creditors of various entities" and "should be used sparingly." *Ibid.* (cleaned up). On the other hand, the court noted "a 'modern' or 'liberal' trend toward allowing substantive consolidation[.]" *Ibid.* At any rate, before ordering substantive consolidation—and with an eye towards achieving an equitable result—"court[s] must conduct a searching inquiry to ensure that consolidation yields benefits offsetting the harm it inflicts on objecting parties." *Id.* at 249. Trying to guide courts in conducting

that "searching inquiry," the Circuit adopted a burden-shifting framework for courts to use—and outlined several factors for courts to consider—in resolving a consolidation request. *See ibid.* (noting that "the proponent of consolidation may want to frame his argument using the seven factors outlined in *In re Vecco Construction Industries, Inc.*, [4 B.R. 407, 410 (E.D. Va. 1980)]," and setting forth five "[a]dditional ['*Eastgroup*'] factors that could be presented in some cases").[12] After weighing these factors, the court concluded that there was "sufficient evidence on the common identity of the debtor entities" and that "[c]onsolidation w[ould] help see to it that [one debtor's] creditors are not harmed by such transactions for which [it] received no consideration." *Id.* at 251. The Eleventh Circuit thus affirmed the bankruptcy court's order granting the trustee's motion for substantive consolidation. *See id.* at 252 ("We AFFIRM the order of the bankruptcy court granting substantive consolidation in the bankruptcy cases of [the two debtors].").

Our Bankruptcy Court analyzed each of the *Vecco* and *Eastgroup* factors in detail, *see* Consolidation Order at 14–24, and our Appellants *do not* dispute the Bankruptcy Court's assessment

---

[12] The seven *Vecco* factors are:

(1) The presence or absence of consolidated financial statements.
(2) The unity of interests and ownership between various corporate entities.
(3) The existence of parent and intercorporate guarantees on loans.
(4) The degree of difficulty in segregating and ascertaining individual assets and liabilities.
(5) The existence of transfers of assets without formal observance of corporate formalities.
(6) The commingling of assets and business functions.
(7) The profitability of consolidation at a single physical location.

*Eastgroup*, 935 F.2d at 250 (citing *In re Vecco Constr. Indus., Inc.*, 4 B.R. 407, 410 (E.D. Va. 1980)). The five additional *Eastgroup* factors are:

(1) the parent owning the majority of the subsidiary's stock;
(2) the entities having common officers or directors;
(3) the subsidiary being grossly undercapitalized;
(4) the subsidiary transacting business solely with the parent; and
(5) both entities disregarding the legal requirements of the subsidiary as a separate organization.

*Ibid.*

of those factors—nor do they suggest that the Bankruptcy Court somehow misapplied or mis-weighed those factors, *see generally* Initial Br.; Reply Br. [ECF No. 34]; *see also* Consolidation Order at 23–24 (noting that the Smith Entities' supplemental briefing "address[ed] the *Vecco* and *Eastgroup* analysis" but "raised no substantive arguments in opposition to consolidation or to contest the applicability [of] [these] factors").

Instead, the Appellants contend that *Eastgroup* is inapposite here because the parties in that case never raised—and the court thus never considered—the procedural objections the Smith Entities advance here. *See* Reply at 1 (noting that "there is no mention of Bankruptcy Rule 7001" in *Eastgroup* and arguing that, in *Eastgroup*, "the targets of substantive consolidation consent[ed] to lesser procedural due process"). Those procedural objections, as we've said, are that, under subsections (1), (2), (7), and (8) of Bankruptcy Rule 7001, "substantive consolidation must be sought by adversary proceeding." Initial Br. at 12. And, the Appellants insist, the Bankruptcy Court's decision to grant the Trustee's motion to consolidate violated their due-process rights. *See ibid.* ("The Bankruptcy Court took the Appellants' assets without due process inherent in adversary proceedings, including: acquisition of in personam jurisdiction by service of a summons; notice of and the opportunity to contest the legal and factual bases for the relief sought; discovery; and the opportunity to object to a report and recommendation to the District Court.").[13]

But, in the bankruptcy proceedings below, the Appellants *never* advanced any Rule 7001(1) or (2) arguments. *See generally* Response in Opp. to Consolidation; Opp. to Supp. Consolidation Br. They've thus forfeited those positions on appeal. *See Dean Witter Reynolds, Inc. v. Fernandez*, 741 F.2d 355, 360 (11th Cir. 1984) ("Except for questions concerning the power of the court to order relief, an

---

[13] In Part II, *infra*, we'll discuss our view that the Bankruptcy Court *had* personal jurisdiction over the Appellants. And, in Part III, we'll explain why the Bankruptcy Court *didn't* need to submit a report and recommendation.

appellate court generally will not consider a legal issue or theory unless it was presented to the trial court."). In a footnote, the *Dean Witter* Court clarified that the "power of the court to order relief" includes jurisdictional questions—about subject-matter jurisdiction, for instance—and questions about indispensable parties. *See id.* at 360 n.18; *see also Rickard v. Auto Publishers, Inc.*, 735 F.2d 450, 453 n.1 (11th Cir. 1984) ("If an appellate court perceives a potential defect in federal subject matter jurisdiction, it is obligated to raise the issue *sua sponte*."); *Miami Herald Media Co. v. Fla. Dep't of Transp.*, 345 F. Supp. 3d 1349, 1371 (N.D. Fla. 2018) (Stafford, J.) ("The indispensable-party issue may be raised on appeal and by the court *sua sponte* at any time."). Still, the Eleventh Circuit noted that "[t]his principle is not a jurisdictional limitation but merely a rule of practice, and the decision whether to consider an argument first made on appeal is left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases." *Dean Witter*, 741 F.2d at 360.

The new argument the Appellants advance here—whether substantive consolidation must be sought by adversary proceeding under Bankruptcy Rule 7001 —doesn't implicate our subject-matter jurisdiction or the indispensability of absent parties. Nor does it concern our power to order relief, since (as we'll explain) a bankruptcy court has the discretion to order substantive consolidation by motion. So, we'll exercise our discretion, as the sitting appellate court, and focus *only* on the objections the Appellants presented to the Bankruptcy Court—*viz.*, that, under Rule 7001(7), Rule 7001(8), and the Due Process Clause, a bankruptcy judge can order substantive consolidation *only* through an adversary proceeding.

### A.      Rule 7001(7) Doesn't Apply to Substantive Consolidation

Rule 7001(7) provides, in relevant part, that "a proceeding to obtain an injunction or other equitable relief" requires an "adversary proceeding." FED. R. BANKR. P. 7001(7). The Appellants' argument is straightforward: Substantive consolidation (they say) is a form of equitable relief and thus, under a plain reading of Rule 7001(7), can only occur within the confines of an adversary proceeding.

*See* Initial Br. at 13; *see also* Reply Br. at 5 (noting that Rule "7001 has been amended by the Supreme Court twice after *Eastgroup* with no added exception for *some* types of equitable relief").

The Bankruptcy Court disagreed that substantive consolidation fell within Rule 7001(7)'s definition of "other equitable relief" because (it held) the power to consolidate isn't injunctive in nature. *See* Consolidation Order at 25 (explaining that "[t]he 'other equitable relief' under 7001(7) generally refers to relief consistent with the nature of an injunction"). To support this view, the court relied on a case from the Northern District of West Virginia, which similarly involved a dispute over the scope of Rule 7001(7). *See In re Protea Biosciences, Inc.*, 2018 WL 5734464, at *4 (Bankr. N.D. W. Va. Oct. 30, 2018). In that case, the debtor had "object[ed] to [two] unsecured proof[s] of claim filed by [certain creditors]" and "request[ed] that both unsecured claims be recharacterized as capital contributions." *Id.* at *1. The creditors countered that "[the debtor]'s effort to recharacterize their asserted unsecured claims into capital contributions require[d] an adversary proceeding" under the provisions of Rule 7001(7). *See id.* at *2. The *Protea Biosciences* Court disagreed with the creditors, explaining that "a request for recharacterization of a debt, which is represented by a proof of claim, to a capital contribution, which is generally represented by a proof of interest, is not a proceeding to obtain an 'injunction or other equitable relief' as provided in FED. R. BANKR. P. 7001(7)." *Id.* at *4. It noted that "the term 'other equitable relief' generally includes accountings, specific performance, marshalling, constructive trusts, and other orders to compel compliance with state law." *Ibid.* (citing 10 COLLIER ON BANKRUPTCY ¶ 7001.08 (16th ed. 2018)). The recharacterization of debt, in the *Protea Biosciences* Court's view, fell under none of these categories and was "not consistent with the nature of an injunction or other equitable relief as contemplated by FED. R. BANKR. P. 7001(7)." *Ibid.* Relying on *Protea Biosciences*, our Bankruptcy Court concluded that "[t]he mere fact that a bankruptcy court is providing some form of equitable relief does not mandate an adversary proceeding where the equitable

relief is not based upon conduct that might be remedied by an injunction as contemplated by [Rule] 7001(7)." Consolidation Order at 25.

We agree with the Bankruptcy Court that substantive consolidation falls outside the ambit of Rule 7001(7). As a threshold matter, courts around the country appear to agree that Bankruptcy Rule 7001(7) does not cover *all* forms of injunctive or equitable relief. The Bankruptcy Appellate Panel for the Ninth Circuit, for example, had this to say on the subject:

> Rule 7001(7) does not cover all types of equitable relief. The relief of interpreting, clarifying and modifying a prior court order pursuant to Civil Rule 60(b) is equitable in nature . . . . But Civil Rule 60(b) on its face states that relief under that Civil Rule may be sought by motion. Furthermore, motions under Civil Rule 60(b) in bankruptcy cases are considered contested matters that may be brought by motion. *See* Rule 9024; *State Bank of S. Utah v. Gledhill (In re Gledhill)*, 76 F.3d 1070, 1078 (10th Cir. 1996); *see also Kalikow*, 602 F.3d at 93–94 (holding that motion seeking interpretation and enforcement of prior order granting injunctive relief did not require an adversary proceeding).
>
> It makes little sense to require an adversary proceeding when the court is interpreting a prior stipulated ruling based on an agreement of the parties; to the extent there are disputed factual issues regarding the agreement, contested matters allow for discovery and evidentiary hearings similar to what is allowed for in adversary proceedings. *See* Rule 9014(c); *see also Int'l Fibercom*, 503 F.3d at 946 (holding that evidentiary hearing was available but not necessary)[.]

*In re Rodeo Canon Dev. Corp.*, 2010 WL 6259764, at *7 (9th Cir. BAP Oct. 28, 2010).

Similarly, in *WorldCorp*, Delaware's bankruptcy court found that an "adversary proceeding [was] not necessary where the relief sought [was] the enforcement of an order previously obtained," even though "the relief sought"—the enforcement of a prior order approving a settlement agreement—was unquestionably "equitable." *In re WorldCorp, Inc.*, 252 B.R. 890, 895 (Bankr. D. Del. 2000). And the Southern District of New York's bankruptcy court has said that "'[o]ther equitable relief' as used in Bankruptcy Rule 7001(7) should include relief other than injunctions traditionally granted only by courts of equity." *In re Live Primary, LLC*, 626 B.R. 171, 190 (Bankr. S.D.N.Y. 2021). In other words, Rule 7001(7) requires an adversary proceeding *either* for an injunction *or* for the kinds of equitable relief "traditionally granted *only* by courts of equity." *Ibid.* (emphasis added).

17

And there are plenty of other examples of this tendency to limit the scope of Rule 7001(7). Bankruptcy courts, for instance, frequently allow parties to move to compel performance of a confirmed plan by motion, rather than by complaint. *See, e.g., In re Riverside Nursing Home*, 137 B.R. 134 (Bankr. S.D.N.Y. 1992); *Matter of Attalla Golf & Country Club, Inc.*, 181 B.R. 611 (Bankr. N.D. Ala. 1995). And civil-contempt sanctions, which are also "rooted in equitable principles," *U.S. Commodity Futures Trading Comm'n v. S. Tr. Metals, Inc.*, 2017 WL 2875427, at *5 (S.D. Fla. May 15, 2017) (Torres, Mag. J.), *report and recommendation adopted*, 2017 WL 3835692 (S.D. Fla. Sept. 1, 2017) (King, J.), "generally . . . *must* be sought by contested matter rather than an adversary proceeding," *In re McLean*, 794 F.3d 1313, 1326 (11th Cir. 2015) (emphasis added); *see also In re Brown*, 2017 WL 6498055, at *3 (N.D. Ala. Dec. 15, 2017) ("Based on the Eleventh Circuit Court's ruling in *McLean*, this [c]ourt finds the [d]ebtor should have filed a motion for an order of contempt and not an adversary proceeding."). These examples all cast doubt on the Appellants' contention that a bankruptcy court must commence adversary proceedings before awarding *any* form of equitable relief.

None of this, however, resolves *our* question—*viz.*, whether substantive consolidation (as opposed to civil contempt, confirmation of a bankruptcy plan, or enforcement of a prior order) can occur *only* through adversary proceedings. And we admit that this question is much more complicated. Many of the cases we've just cited, for instance, have very different facts from ours, and most of them didn't grapple with a remedy as severe as substantive consolidation. Still, after careful review, we agree with the Bankruptcy Court that substantive consolidation doesn't *require* an adversary proceeding.

For starters, there's a longstanding practice (in and out of our Circuit) of allowing consolidation by motion, rather than requiring substantive consolidation to proceed through an adversary proceeding—a tradition that belies the Appellants' claim that "substantive consolidation *must* be sought by adversary proceeding[.]" Initial Br. at 12 (emphasis added). When substantive consolidation is initiated by motion, it's considered a "contested matter" under Bankruptcy Rule 9014.

"A contested matter . . . is any litigation resolving an 'actual dispute, *other than an adversary proceeding*, before the bankruptcy court.'" *In re McLean*, 794 F.3d at 1326 (emphasis added) (quoting FED. R. BANKR. P. 9014 advisory committee's note); *see also In re 1438 Meridian Place, N.W.*, 15 B.R. 89, 95 (Bankr. D.D.C. 1981) ("[I]t is well established that contested matters are properly initiated by motion pursuant to Bankruptcy Rule [9014]."). An adversary proceeding, on the other hand, must be initiated by complaint under Bankruptcy Rule 7001(1). *See In re Denby-Peterson*, 941 F.3d 115, 129 n.71 (3d Cir. 2019) ("An adversary proceeding is essentially a self-contained trial—still within the original bankruptcy case—in which a panoply of additional procedures apply, . . . including the requirement that a complaint must be filed to commence such a proceeding[.]" (cleaned up)).

And federal courts routinely condone the practice of substantive consolidation by motion. In *Eastgroup*, for example, the Eleventh Circuit held that "[t]he D.C. Circuit has elaborated a standard, which we adopt today, by which to determine whether to grant a motion for substantive consolidation," 935 F.2d at 249 (citing *In re Auto-train Corp.*, 810 F.2d 270, 276 (D.C. Cir. 1987))— assuming thereby (at least implicitly) that consolidation *needn't* occur in an adversary proceeding (which would be initiated *by complaint*, not by motion). And several of our sister circuits agree. The Ninth Circuit, for instance, has held that substantive consolidation can be ordered "in numerous procedural contexts," and that a "bankruptcy court may order substantive consolidation as a contested matter upon motion by the involved parties, as was done in the instant appeal, or via an adversary proceeding or other procedural device, as long as there is notice and an opportunity to be heard." *In re Bonham*, 229 F.3d 750, 765 n.9 (9th Cir. 2000). And the Third Circuit has likewise held that "substantive consolidation is typically handled as a contested matter[,] not as an adversary proceeding." *Phar-Mor, Inc. v. Coopers & Lybrand*, 22 F.3d 1228, 1239 n.18 (3d Cir. 1994).

District and bankruptcy courts around the country appear to take the same view. *See, e.g.*, *In re Archdiocese of St. Paul & Minneapolis*, 553 B.R. 693, 699 (Bankr. D. Minn. 2016) ("With exceptions,

Bankruptcy Rule 7001(1) requires an adversary proceeding in order to recover money or property . . . . Substantive consolidation, however, is not tantamount to turnover. Instead, substantive consolidation is an equitable, judicial remedy that is distinct from the express, statutory remedies of turnover or other recovery actions. Substantive consolidation is traditionally sought by motion."); *In re Raymond*, 529 B.R. 455, 488 n.31 (Bankr. D. Mass. 2015) ("Courts have determined that neither an adversary proceeding nor the filing of an involuntary petition is required and substantive consolidation may be sought by motion."); *In re Alico Mining, Inc.*, 278 B.R. 586, 588 (Bankr. M.D. Fla. 2002) (Paskay, J.) (finding that the court "ha[d] jurisdiction to consider the request of consolidation [by] [m]otion"); *Matter of New Ctr. Hosp.*, 187 B.R. 560 (E.D. Mich. 1995) (affirming bankruptcy court's decision to grant substantive consolidation through a motion for summary judgment); *In re Falls Event Ctr. LLC*, 600 B.R. 857, 870 (Bankr. D. Utah 2019) (granting Chapter 11 trustee's motion to substantively consolidate).[14]

---

[14] We could only find one case, from the Bankruptcy Court for the Western District of Tennessee, suggesting that substantive consolidation *cannot* proceed by motion. *See In re Julien Co.*, 120 B.R. 930, 937 (Bankr. W.D. Tenn. 1990) ("The attempted remedy [substantive consolidation] is more offensive because it is sought by motion rather than by adversary proceeding. . . . The procedure appears unnecessarily awkward, assuming that it can be done. This is especially true when it is obvious that alternatives appear which are not only more workable but more procedurally sound."). No court, however, has followed that decision—and many have criticized (or distinguished) it. *See, e.g.*, *In re Bonham*, 226 B.R. 56, 91 (Bankr. D. Alaska 1998) ("[T]he *Julien* court failed to recognize the distinction between veil piercing as a state law doctrine versus substantive consolidation as a bankruptcy doctrine recognized by virtue of a supreme court opinion, and a number of circuit and bankruptcy courts."), *aff'd*, 229 F.3d 750 (9th Cir. 2000); *In re Villavicencio*, 2023 WL 6617720, at *5 (Bankr. S.D. Ohio Oct. 11, 2023) ("The *Julien* Court found the substantive consolidation was non-core because the *Julien* trustee was acting on behalf of the corporate debtor and attempting to get control over all of the individual's assets, 'whether they [were] related to [the corporate debtor] or not.' The *Julien* Court distinguished its facts from a case in which an individual debtor exerted control over a corporation to render the corporation an alter ego of the individual because 'that result simply recognizes that the corporate assets were in reality assets of the individual debtor.' The facts here resemble the distinguished scenario." (quoting *In re Julien*, 120 B.R. at 934)). Our case—where an individual (Smith) was treating various related corporate entities, including the corporate debtor, as his mere alter egos— likewise resembles the scenario *Julien* found distinguishable (and thus more conducive to consolidation by motion).

As these decisions make plain, courts routinely order substantive consolidation by motion—and *not* by requiring an adversary proceeding. Given that our own Circuit has adopted (from the D.C. Circuit) a test "by which to determine whether to grant" substantive consolidation by motion, *see Eastgroup*, 935 F.2d at 249—and since we've found no Eleventh Circuit opinions since *Eastgroup* abrogating or calling that test into question—we cannot agree with the Appellants that there's any binding (or even persuasive) authority holding that "substantive consolidation *must* be sought by adversary proceeding[.]" Initial Br. at 12 (emphasis added). We recognize that, on one reading of the text of Rule 7001(7), all forms of equitable relief trigger adversary proceedings. *See* FED. R. BANKR. P. 7001 ("The following are adversary proceedings: . . . . (7) a proceeding to obtain an injunction or other equitable relief, except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for the relief[.]"). But, for several reasons—and in addition to the longstanding practice we've just described—we don't think that's necessarily the best reading of the rule.

*First*, and most tellingly, if the phrase "other equitable relief" in Rule 7001(7) meant *all* equitable relief, then the word "injunction" in the same rule would be superfluous, since an injunction is a kind of equitable relief. And, "[i]f possible, every word and every provision [in a rule] is to be given effect . . . . None should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence." A. SCALIA & B. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 174 (2012). The phrase "injunction or other equitable relief" must therefore be interpreted in a way that affords the word "injunction" some independent meaning—one that "renders [the] word operative, rather than . . . idle or nugatory." *Ibid.* In other words, we won't presume that the drafters of Rule 7001(7) chose to include a word—"injunction"—"that contribute[s] nothing to [the] meaning" of the rule. *Id.* at 179; *see also Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 385–86 ("The canon against surplusage is not an absolute rule. . . . [But it is at its] strongest

when an interpretation would render superfluous another part of the same statutory scheme."). The phrase "other equitable relief" must therefore mean something less than "all equitable relief."

*Second*, under the contextual canon, *noscitur a sociis*, "words are given meaning by their context." SCALIA & GARNER at 195. So, when "words [ ] are associated in a context suggesting that the words have something in common, they should be assigned a permissible meaning that makes them similar." *Ibid.*; *see also United States v. Schuster*, 467 F.3d 614, 619–20 (7th Cir. 2006) (holding that, "under the principle of *noscitur a sociis*, . . . the meaning of questionable words or phrases in a statute may be ascertained by reference to the meaning of words or phrases associated with it" (cleaned up)). Here, the word "injunction" as it appears in Rule 7001(7) informs our understanding of the companion phrase, "other equitable relief." Their proximity, in other words, suggests that they must have "something in common," SCALIA & GARNER at 195—just as the Bankruptcy Court concluded when it held that the "mere fact that a bankruptcy court is providing some form of equitable relief does not mandate an adversary proceeding where the equitable relief is not based upon conduct that might be remedied by an injunction as contemplated by FRBP 7001(7)," Consolidation Order at 25. Because, in short, "[a]ssociated words bear on one another's meaning," SCALIA & GARNER at 195, the phrase "other equitable relief" in Bankruptcy Rule 7001(7) must be seen as referring to the kinds of equitable relief that function like—or are in material ways similar to—an injunction. And substantive consolidation differs from an injunction in salient ways.[15]

---

[15] We've previously held—in reviewing a decision of the bankruptcy court—that the *noscitur a sociis* canon can apply to a list of two items:

> And while the word "including" might suggest that the general phrase "district courts constituted by chapter 5" encompasses more than just the two examples listed in the statute ["the Court of International Trade and any court created by Act of Congress the judges of which are entitled to hold officer during good behavior"], the set of included courts must "be of the same kind" as the courts described in the rest of the statutory definition. *See* [SCALIA & GARNER] at 199 ("Where general words follow an

At bottom, an injunction is a "court order commanding or preventing an action." *Injunction*, BLACK'S LAW DICTIONARY (11th ed. 2019). But, "in its accepted legal sense," an injunction is also "defined as a writ framed according to the circumstances of the case, commanding an act which the court regards as *essential to justice*, or restraining an act which it esteems *contrary to equity and good conscience*[.]" *Ibid.* (quoting 1 HOWARD C. JOYCE, A TREATISE ON THE LAW RELATING TO INJUNCTIONS § 1, at 2–3 (1909) (emphases added)). "It is a bedrock principle of courts of equity," in other words, "that they may impose the substantive remedy of injunctive relief *only* when fundamental fairness and justice demand it." *Coral Springs St. Sys., Inc. v. City of Sunrise*, 371 F.3d 1320, 1340 (11th Cir. 2004). Substantive consolidation, while not a trivial remedy, doesn't really function like an injunction, since its effect is essentially just a "redistribution of wealth[.]" *In re Affiliated Foods, Inc.*, 249 B.R. 770, 776 (W.D. Mo. 2000). It's often invoked due to the increasingly "widespread use of interrelated corporate structures by subsidiary corporations operating under a parent company's corporate umbrella for tax and business purposes." *Ibid.* And "substantive consolidation may be authorized whenever it will benefit the debtors' estates," so long as the consolidation does not "betray[ ] [the] legitimate expectations of the debtors and their respective creditors." *Ibid.*

---

enumeration of two or more things, they apply only to persons or things of the same general kind or class specifically mentioned"); *see also id.* at 195 (describing *noscitur a socii* canon as requiring that words "associated in a context suggesting that [they] have something in common[ ] . . . should be assigned a permissible meaning that makes them similar").

*Wizenberg v. Wizenberg*, 612 B.R. 454, 458 (S.D. Fla. 2020) (Altman, J.); *see also Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 120 (2d Cir. 2007) ("[W]hen *two or more words* are grouped together, and ordinarily have a similar meaning, but are not equally comprehensive, the general word will be limited and qualified by the specific word[.]" (emphasis added & quoting 2A NORMAN J. SINGER, STATUTES AND STATUTORY CONSTRUCTION § 47.16 (6th ed. 2002))); *Guardian Indus. Corp. v. C.I.R.*, 143 T.C. 1, 15 (T.C. 2014) ("While 'noscitur a sociis' is most commonly applied to lists of three or more terms, it may apply when two or more words are grouped together." (cleaned up)).

To put a finer point on it, an injunction represents the exercise of negative judicial power. Through an injunction, a court prohibits a party from taking certain actions. And there are accordingly well-defined penalties that attend a party's failure to abide by the negative restrictions an injunction imposes. Consolidation, by contrast, obtrudes no restrictions on anyone. It brings to bear no negative force. It, in fact, prohibits nothing at all. It simply takes two or more entities that, for all practical purposes, are indistinguishable alter egos of one another and treats them as one. Nothing more, nothing less.

There is, in short, a longstanding tradition among the federal courts—including in this Circuit—of allowing substantive consolidation by motion. That tradition is supported by the text of the relevant rule. And the Appellants offer no cases—nor have we found any—for their view that bankruptcy courts *must* order substantive consolidation *only* through adversary proceedings.[16] We therefore reject the Appellants' interpretation of Rule 7001(7) and agree with the Bankruptcy Court that substantive consolidation need not occur in an adversary proceeding.

### B.   Rule 7001(8) Doesn't Apply to Substantive Consolidation

The Appellants also rely—albeit in one passing sentence—on Rule 7001(8) for their argument that the Bankruptcy Court lacked authority to order substantive consolidation by motion. Rule 7001(8) provides, in relevant part, that "a proceeding to subordinate any allowed claim or interest" constitutes an adversary proceeding. FED. R. BANKR. P. 7001(8). In support of this argument, the Appellants offer no case citations at all. Instead, they ask only a single question: "How," they wonder, "can one note

---

[16] The Appellants obviously miss the point when they note that "[n]o case cited by the bankruptcy court or the Trustee held that substantive consolidation need only be by motion over the objection of the target party[.]" Initial Br. at 13. The question isn't whether the Bankruptcy Court *had* to order substantive consolidation by motion. The question is whether the Bankruptcy Court was *permitted* to do so. Since the Appellants have found *no cases* for their view that the Bankruptcy Court was prohibited from proceeding by motion—and since there are plenty of cases supporting the Bankruptcy Court's position that it *could* consolidate by motion—we reject the Appellants' interpretation of the relevant rule.

the relief granted and deny that the [Consolidation] Order . . . effectively subordinated whatever claims some of the Targets held against the Debtor?" Initial Br. at 13. But a party "[forfeits] a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority." *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014); *see also Hamilton v. Southland Christian Sch., Inc.,* 680 F.3d 1316, 1319, *overruled in part on other grounds by United States v. Durham*, 795 F.3d 1329, 1331 (11th Cir. 2015) (en banc) ("[T]he failure to make arguments and cite authorities in support of an issue waives it."); *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented . . . are deemed waived.").

In any event, as the Bankruptcy Court noted, the Appellants "misunderstand the concept of substantive consolidation." Consolidation Order at 26. Admittedly, the Appellants' logic is, at first glance, alluring. If (they seem to suggest) pushing a claim back in line requires an adversary proceeding, then so too should the more draconian act of extinguishing the claim altogether. But the Rule, by its terms, only governs subordination proceedings—not consolidation orders. *Cf. Carcieri v. Salazar*, 555 U.S. 379, 387 (2009) ("This case requires us to apply settled principles of statutory construction under which we must first determine whether the statutory text is plain and unambiguous. If it is, we must apply the statute according to its terms."); *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1334 (11th Cir. 2013) ("This absence of legislative language restricts our interpretation, as we are not allowed to add or subtract words from a statute. . . . [O]ur task is merely to apply statutory language, not to rewrite it[.]" (cleaned up)). We won't be changing the Rule by adding words that aren't there.

At any rate, subordination and substantive consolidation are very different remedies—and they tackle very different problems created by different sets of parties. *See In re S&G Fin. Servs. of S. Fla., Inc.*, 451 B.R. 573, 583 (Bankr. S.D. Fla. 2011) (Isicoff, J.) ("[S]ubstantive consolidation is a remedy in addition to, rather than an alternative of, other remedies that deal with disregard of a corporate entity . . . . 'Equitable subordination places bad-acting creditors behind other creditors when

distributions are made. . . . Substantive consolidation goes in a direction different (and in most cases

further) than any of these remedies; it is not limited to shareholders, it affects distribution to innocent

creditors, and it mandates more than the return of specific assets to the predecessor owner. It brings

all the assets of a group of entities into a single survivor.'" (quoting *In re Owens Corning*, 419 F.3d at

206)). Subordination, in other words, moves the claims of bad-acting *creditors* back in line, whereas

consolidation takes the assets of several different entities (usually related to the *debtor*) and combines

them to reflect the reality that, in practice, the entities (and the debtor) are operating as alter egos of

one another. Given the obvious differences between subordination and substantive consolidation, we

won't adopt the Appellants' half-baked interpretation—which would require us to expand the scope

of Rule 7001(8) beyond its plain meaning.

As the Bankruptcy Court correctly explained, "[n]one of the [Appellants'] claims will have

been subordinated to any other claims by virtue of consolidation," Consolidation Order at 26, so Rule

7001(8) is just inapplicable here, *see In re Owens Corning*, 419 F.3d at 195 (noting that the "[h]arms that

substantive consolidation addresses are nearly always those caused when debtors, and entities that

they control, disregard separateness; harms caused by creditors are remedied by fraudulent transfer

avoidance or equitable subordination claims").

### C.    Substantive Consolidation by Motion Didn't Violate Due Process

The Appellants also claim that "[t]he Bankruptcy Court took [their] assets without due process

inherent in adversary proceedings." Initial Br. at 12. Again, however, in advancing this argument, the

Appellants say only that "basic due process [wasn't] afforded the target companies," Initial Br. at 6—

without *any* legal support or argument—which is reason enough to disregard it, *see Campbell*, 26 F.4th at 873; *Hamilton*, 680 F.3d at 1319; *In re Egidi*, 571 F.3d at 1163; and *Sapuppo*, 739 F.3d at 681.[17]

What the Appellants do say (presumably as part of their due-process argument) is that, "[i]f the Targets had been pursued by adversary proceedings, any which had not filed claims would have been entitled to a trial by jury." Initial Br. at 9. But the Appellants unambiguously forfeited this argument by never presenting it to the Bankruptcy Court. *See generally* Response in Opp. to Consolidation; Opp. to Supp. Consolidation Br.; *see also Dean Witter*, 741 F.2d at 360 ("Except for questions concerning the power of the court to order relief, an appellate court generally will not consider a legal issue or theory unless it was presented to the trial court."); *In re Sublett*, 895 F.2d 1381, 1383 (11th Cir. 1990) ("The district court in a bankruptcy appeal . . . functions as an appellate court in reviewing the bankruptcy court's decision."). In any event, the law is well-settled that parties *don't* have jury-trial rights on equitable matters (like substantive consolidation). *See In re Seminole Walls & Ceilings Corp.*, 336 B.R. 539, 545 (Bankr. M.D. Fla. 2006) (Jennemann, J.) (explaining that, under the test the Supreme Court set out in *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989), a party isn't entitled to a jury trial on the issue of substantive consolidation because it is "entirely equitable in nature").

The Trustee asks us to uphold the Consolidation Order because "[t]he Appellants were afforded all the due process required by law attendant to motion practice." Response Br. at 16. Indeed, the Bankruptcy Court was clear that, "[w]hen substantive consolidation is sought by motion, notice

---

[17] The Appellants reiterate, in a Notice of Supplemental Authority [ECF No. 36], that the "Bankruptcy Court's substantive consolidation of non-parties into the bankruptcy case" lacked "the due process protections afforded through [an] adversary proceeding," which (they believe) were required under Bankruptcy Rule 7001(7). *Id.* at 5 (citing *Smith v. Spizzirri*, 601 U.S. 472, 476 (2024)). But the case they cite (*Smith*) had nothing to do with substantive consolidation (or bankruptcy law for that matter) and merely reiterated the well-worn axiom that "the use of the word 'shall'" in a statute or rule "creates an obligation impervious to judicial discretion." 601 U.S. at 476. As we've explained, no such statute or rule *unambiguously requires* that substantive consolidation occur *only* by adversary proceeding.

to the Target Companies must be adequate to satisfy due process concerns." Consolidation Order at 27. And these notice requirements *were* satisfied, the Bankruptcy Court explained, because the "Trustee ha[d] served the Motion and Notice of Hearing by first class mail," as the Bankruptcy Code requires, "upon all the Debtor's creditors, all known creditors of Target Companies, and potential interested parties as well as each of the Target Companies themselves, and Don Smith personally." *Id.* at 28. The Bankruptcy Court also noted that "the Target Companies were afforded an adequate opportunity to be heard" because they were represented at "two hearings on the [Consolidation] Motion" and were even given "an additional opportunity to brief any substantive arguments they had in opposition." *Id.* at 29.

The Appellants offer several citation-less objections, which we'll consider—and reject—in turn. *First*, the Appellants claim that they "lost all of their assets without having been confronted with specific allegations of their alleged wrong doings[.]" Initial Br. at 5. But that's not true. When the Bankruptcy Court asked the parties for supplemental briefing, it ordered the Trustee to outline the facts supporting consolidation as to *each* entity. *See* Consolidation Order at 29 ("[T]he Trustee was ordered to provide additional detail as to the facts supporting consolidation prior to the Target Companies' response."). And the Trustee duly complied with that order by filing a detailed, entity-by-entity analysis. *See generally* Supplement to Trustee's Motion to Substantively Consolidate Raw Materials Corp., Raw Energy Materials, Corp., Global Energy Sciences, LLC, and Raw, LLC into this Estate [Bankr. ECF No. 394]. Probably for this reason, at the second motion hearing the Bankruptcy Court held on the Motion to Substantively Consolidate, *see* Order Continuing Hearing on Trustee's Motion to Substantively Consolidate [Bankr. ECF No. 392], the Appellants *never* complained that they somehow didn't understand the basis for the Trustee's consolidation request.

*Second*, the Appellants argue that they never had "the opportunity to respond individually." Initial Br. at 5. This, too, is belied by the record. At the consolidation hearings, the Appellants were

each represented by counsel. *See* Mar. 3, 2023, Hr'g Tr. [Bankr. ECF No. 493] at 4:19–21 (entering an appearance "on behalf of Raw Energy Materials, Raw Materials Corp., Global Energy Sciences and Raw, LLC"); Apr. 25, 2023, Hr'g Tr. at 3:5–8 (entering an appearance on behalf of all "target entities"). True, the Appellants were not given the opportunity to present evidence at those hearings. *See* Consolidation Order at 33 ("The Court finds that no new evidence or argument is necessary to adjudicate the issue of substantive consolidation."). But (again) as the Bankruptcy Court explained at its motion hearing, Smith had *already* "testif[ied] as to each of these target entities"—and, specifically, about "how he is the owner and sole person in control of those entities"—and Smith "would be the same witness" who would be "called again to testify on the same point" at the consolidation stage. Apr. 25, 2023, Hr'g Tr. at 20:6–12; *see also* Consolidation Order at 33 ("All of the essential factual findings in support of consolidation have already been found, the questions presented under the consolidation analysis are identical to those already decided in the Conversion Order, and so the issues at stake are identical to those previously decided."). We're not sure what else Smith would have said the second time around that he didn't say in his original testimony—and the Appellants never bother to tell us. *See generally* Initial Br.; Reply Br. Nor do the Appellants identify any *other* piece of evidence— other than Smith's testimony—they would have liked to offer in support of their consolidation arguments. *See ibid.* And we cannot say that the Bankruptcy Court failed in affording the Appellants a chance to present evidence without understanding what that evidence would have been or how it might have affected the outcome.

*Finally*, the Appellants claim that their assets were taken "without the opportunity to engage in discovery[.]" *Ibid.* That's true, but irrelevant, because "it is within the discretion of the bankruptcy court to limit discovery in contested matters," *In re Old Cold, LLC,* 602 B.R. 798, 830 (1st Cir. BAP

2019)[18]—and, as the Appellants concede, *see* Initial Br. at 10 ("[T]he Bankruptcy Court . . . granted the Motion [to Consolidate] . . . [without the] due process inherent in the required adversary proceeding mandated by B.R. 7001."), this wasn't an adversary proceeding.

> **D.     The Lack of an Adversary Proceeding was Harmless**

But here's the thing: Even if the Appellants are right that the Bankruptcy Court erred by entering the consolidation order without an adversary proceeding, that error was unambiguously harmless, since the Appellants received all the due process they were owed. That is, even if an adversary proceeding *were* required, the error would be harmless because the Appellants received adequate notice and an opportunity to be heard. *See* Consolidation Order at 28–29. As the Bankruptcy Court explained:

> In this case, the Trustee has served the Motion and Notice of Hearing by first class mail, in compliance with Rule 7004, upon "all of the Debtor's creditors, all known creditors of [Target Companies], and potential interested parties" as well as each of the Target Companies themselves, and Don Smith personally. The Trustee also served the Order Continuing the Hearing, and the Amended Notice of Hearing upon some twenty-plus creditors, consistent with the Trustee's service of the original Motion. Further, the Target Companies have all responded and were represented at each of the several hearings on this Motion. Neither Smith nor the Target Companies have argued that they or any creditors or equity holders of the Target Companies did not receive adequate notice.
>
> Additionally, the Motion and notice of hearing were served upon Don Smith, and the various Target Companies by First Class Mail approximately three weeks before the Court's initial hearing on the Motion, the same manner of personal service applicable to an adversary complaint as required by FRBP 7004, albeit without a formal summons . . . .
>
> Further, the Target Companies were afforded an adequate opportunity to be heard as the Court conducted two hearings on the Motion and provided the Target Companies an additional opportunity to brief any substantive arguments they had in opposition. Furthermore, the Trustee was ordered to provide additional detail as to the facts supporting consolidation prior to the Target Companies' response.

---

[18] *See also In re Fundamental Long Term Care, Inc.*, 2021 WL 222779, at *3 (M.D. Fla. Jan. 22, 2021) (Covington, J.) ("Federal Rule of Civil Procedure 26(b)(1) states that '[u]nless otherwise limited by court order,' a court has the discretion to limit discovery. Bankruptcy Rule 9014(c) contains a similar rule that applies to 'contested matters.'").

*Ibid.* And that's all the due process the Appellants were owed—with or without an adversary proceeding. *See* FED. R. BANKR. P. 9005 (incorporating Federal Rule of Civil Procedure's harmless-error standard, which mandates that, "[a]t every stage of the proceedings, the court must disregard all errors and defects that do not affect any party's substantial rights").

"The harmless error rule [may] be invoked in the bankruptcy context where procedural irregularities . . . would not have had an effect on the outcome of the case." *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 647 (2d Cir. 1988). An error is generally considered harmless when the affected party received notice and had the opportunity to be heard. *Cf. United States v. Owen*, 963 F.3d 1040, 1052 (11th Cir. 2020) ("Because the district court gave Owen notice and an opportunity to be heard before directing that the funds be paid to the Treasury, however, any error that the district court made was harmless."); *see also, e.g.*, *In re Haffey*, 576 B.R. 540, 549 (6th Cir. BAP 2017) ("The Sixth Circuit Court of Appeals has also applied a harmless error analysis in the bankruptcy context when it determined that unlisted, unsecured claims are discharged in no-asset cases even when the creditor did not receive proper notice of the bankruptcy case. . . . Accordingly, the Panel will examine the Bankruptcy Court's reasons for dismissal to determine if a substantially different result would have occurred if Debtor had been given reasonable notice and opportunity to be heard."); *In re Chance Indus., Inc.*, 367 B.R. 689, 709–10 (Bankr. D. Kan. 2006) ("Even if Jesse is deemed to have held a 'claim' at the time of Chance's bankruptcy and confirmation hearing, the discharge of that claim without giving Jesse reasonable notice and the opportunity to be heard on his claim violates due process.").

And courts routinely hold that the failure to hold an adversary proceeding *is harmless* where, as here, the complaining party received notice and was afforded a full opportunity to present its opposition. *See, e.g.*, *In re Downey Reg'l Med. Ctr.-Hosp., Inc.*, 441 B.R. 120, 127 (9th Cir. BAP 2010) ("Even if Downey's emergency motion constituted a proceeding to determine an interest in property that required an adversary proceeding, FED. R. BANKR. P. 7001(2), the bankruptcy court's decision

not to require an adversary proceeding is subject to a harmless error analysis." (citing *In re Gerwer*, 898 F.2d 730, 734 (9th Cir. 1990)); *In re JAB Energy Sols. II, LLC*, 655 B.R. 76, 79–80 (Bankr. D. Del. 2023) ("[E]ven if the Rules formally required an adversary proceeding, the error the Trustee committed in bringing this proceeding by motion was a harmless one" because "there [was] no dispute that [the party] received notice of the proceeding [and] filed an extensive brief."); *In re Beta Int'l, Inc.*, 210 B.R. 279, 282–83 (E.D. Mich. 1996) ("HDP was given ample opportunity in the bankruptcy court and in this court to present its legal arguments. Even if HDP was entitled to an adversary proceeding, the failure to hold one was a harmless error."); *In re R&B Constr.*, 2010 WL 3397418, at *1 (Bankr. N.D. Ga. Aug. 17, 2010) (Mullins, J.) ("The Court recognizes that the Debtor should have initiated an adversary proceeding in order to determine the validity of the lien. However, . . . [c]ourts have resolved issues of lien validity outside of adversary proceedings when the parties had sufficient notice and the opportunity to be heard. . . . Indeed, Double D was given ample notice of the subject matter of the proceedings, submitted two briefs in support of its position, and participated in a hearing where it further advocated its position regarding the validity of its lien. . . . Therefore, the Court finds that the Debtor's failure to file an adversary proceeding is harmless error." (cleaned up)).

As the Bankruptcy Court painstakingly explained, the Appellants had ample notice and an "adequate opportunity to be heard" in the underlying proceeding. *See ante*, at 30 (quoting Consolidation Order at 29). So, even if the Bankruptcy Court erred by ordering substantive consolidation by motion, any such error was harmless because it didn't interfere with the Appellants' substantial rights and had no appreciable effect on the outcome of the proceedings.

## II.    The Bankruptcy Court Had Personal Jurisdiction Over the Smith Entities

Our Appellants next contend that the Bankruptcy Court lacked personal jurisdiction over them because they were never served with a summons. *See* Initial Br. at 14 (noting that "missing from the record [is] a summons" and arguing that "a court lacks jurisdiction over the person of a defendant

when that defendant has not been served" (cleaned up)). As support for this position, the Appellants say that "[a] defendant's actual notice is not sufficient to cure defectively executed service," *ibid.* (cleaned up), and urge us to follow *Alba v. Advan*, 490 F.3d 826 (11th Cir. 2007), in which the Eleventh Circuit affirmed the district court's dismissal of a complaint for improper service of a summons under Federal Rule of Civil Procedure 4(c). *See* Initial Br. at 14. As the Trustee explains, the Appellants' view here is that "[a]dversary proceedings require a summons and a complaint, *ergo* substantive consolidation requires a summons and a complaint; since neither were present here, the Bankruptcy Court never obtained process over the Appellants." Response Br. at 15–16. But, as we've explained, the Appellants' "initial premise, that an adversary proceeding is required for substantive consolidation, is simply wrong." *Id.* at 10. The Bankruptcy Court found that it could exercise personal jurisdiction over the Smith Entities because "the Motion and notice of hearing were served upon Don Smith[ ] and the various Target Companies by First Class Mail approximately three weeks before the Court's initial hearing on the Motion"—in other words, in "the same manner of personal service applicable to an adversary complaint as required by FRBP 7004, albeit without a formal summons." Consolidation Order at 28–29. And that seems right. Because the Bankruptcy Court opted to proceed *without* an adversary proceeding, the Appellants weren't (as we'll see) entitled to service by *summons*.

As a threshold matter, though, two of the Smith Entities (GES and REM) *cannot* challenge the Bankruptcy Court's personal jurisdiction over them because they filed proofs of claims in the bankruptcy proceedings. *See* Bankruptcy Case Claims Register [ECF 29-3] at 149–50. In GES's Proof of Claim, Smith (as both "the creditor" and the "manager" of GES) claimed "$448,200.00" on the ground that "No Rust Rebar Inc. agreed to pay Global Energy Sciences LLP IP rights from the inception of NRR," with an "IP usage fee of $72,000.00 per year or $200.00 per day." Claim No. 9-2 [ECF No. 29-3] at 125–126. In REM's Proof of Claim, Smith (again as both "the creditor" and the "manager" of REM) claimed $320,600.00. *See* Claim No. 10-1 [ECF No. 29-3] at 130–32. In filing

these claims, these two entities *voluntarily* submitted themselves to the Bankruptcy Court's jurisdiction. *See In re 701 Mariposa Project, LLC*, 514 B.R. 10, 16–17 (9th Cir. BAP 2014) ("[T]he creditor consents to the bankruptcy court's personal jurisdiction by filing a proof of claim." (citing *Katchen v. Landy*, 382 U.S. 323, 334–35 (1966))); *see also In re PNP Holdings Corp.*, 99 F.3d 910, 911 (9th Cir. 1996) (noting that "a person may consent to personal jurisdiction expressly or by implication" and concluding that a claimant had "consented to the bankruptcy court's exercise of personal jurisdiction by filing a proof of claim").

And the Bankruptcy Court had personal jurisdiction over *all* the Smith Entities because they were served in accordance with the bankruptcy rules. The Seventh Circuit, in fact, has already rejected the very argument the Appellants advance here. *See generally Matter of Smith*, 111 F.3d 133 (7th Cir. 1997) (table). The debtors in that case moved for sanctions against a third-party attorney who had "violated the automatic stay" (and who was otherwise uninvolved in the bankruptcy case). *Id.* at *1. As here, the debtors served the lawyer with the motion but not a summons. *See ibid.* Believing that the bankruptcy court thus "lacked personal jurisdiction over her," the lawyer elected not to attend the sanctions hearing. *Ibid.* Noting the lawyer's absence, the bankruptcy court entered a default judgment against her, and the lawyer responded by challenging the enforceability of the court's order. *See ibid.*

The question in *Smith* was whether, "by mailing the motion, [the debtors] effected proper service of process under the Federal Rules of Bankruptcy Procedure." *Ibid.* In answering this question, the court explained that "[a] motion for sanctions under § 362(h) is a contested matter that is governed by Bankruptcy Rule 9014," which "governs actions not listed as adversary proceedings under Rule 7001." *Ibid.* "Rule 9014," the court noted, "requires that 'the motion shall be served *in the manner* provided for service of a summons and a complaint' [for adversary proceedings] by Rule 7004.'" *Ibid.* (citing Fed. R. Bankr. P. 9014). In the court's view, therefore, contested matters "do[ ] not require issuing a summons" and demand only "that plaintiffs serve the defendant with their motion in the

same way they would serve a summons under Bankruptcy Rule 7004." *Ibid.* And Rule 7004 mandates "using the procedures of Fed. R. Civ. P. 4, except that 'in addition to the methods of service authorized by Civil Procedure Rule 4(e)–(j) . . . service may be made within the United States by first class mail postage prepaid . . . by mailing a copy of the summons and complaint to the individual's dwelling house or usual place of abode or to the place where the individual regularly conducts business or profession.'" *Ibid.* (citing FED. R. BANKR. P. 7004(b)(1) (cleaned up)). The court concluded that, because the debtors "mailed a copy of their motion to [the lawyer]" and fulfilled the Rule's other certification requirements, they had effectuated "valid service of process" on the attorney—and "the bankruptcy court [thus] had personal jurisdiction." *Ibid.*; *accord In re Longoria*, 400 B.R. 543, 550 (Bankr. W.D. Tex. 2009) ("Like CAC, the creditor in *Smith* argued that the bankruptcy court had no personal jurisdiction over it because the debtor's motion had not been served with a summons. The Court of Appeals summarily rejected that argument, holding that under the plain language of applicable Rules (9014 and 7004) service of the motion in the manner specified under those Rules was valid and sufficient, and that the bankruptcy court therefore had personal jurisdiction over the creditor.").

Like the motion for sanctions in *Smith*, our substantive consolidation was a contested matter governed by Rule 9014. And, as in *Smith*, the Trustee served process on the Appellants *in the manner* Rule 7004 requires by mailing the motion—though not the summons—to the Smith Entities and by filing the appropriate certificate of service for each of the consolidation hearings. *See* Certificate of Service [Bankr. ECF No. 389] (stating that "a copy of the Motion to Substantively Consolidate [ECF #385] and Notice of Hearing [ECF #388] filed in this case has been sent via U.S. mail to all parties on the attached service list"); Certificate of Service [Bankr. ECF No. 424] (same); *see also* Mar. 2, 2023, Hr'g Tr. at 8:15–18 ("The Court: And notice under 7004, or how was notice provided? [Trustee's Counsel]: Notice [was] provided under 7004, which would be service via regular First-Class Mail."). The Appellants (notably) have never suggested that this notice somehow didn't reach them. *See generally*

Initial Br. at 14 ("What is most telling in the record of this matter is not what is in the record, rather what is glaringly missing from the record, a summons . . . . A defendant's actual notice is not sufficient to cure defectively executed service." (cleaned up)); Reply Br. at 9 ("It is the burden of the Trustee to demonstrate personal jurisdiction over the Targets, not the Targets' burden to show the negative. There having been absolutely no compliance with B.R 7001, no summons was issued, no complaint filed, no service upon the Targets, and therefore no personal jurisdiction.").

In any event, federal courts have long held that a court with personal jurisdiction over a company can exercise personal jurisdiction over that company's alter ego—even *without* an independent basis for the exercise of personal jurisdiction over the alter ego:

> [F]ederal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court. The theory underlying these cases is that, because the two corporations (or the corporation and its individual alter ego) are the same entity, the jurisdictional contacts of one are the jurisdictional contacts of the other for the purposes of the *International Shoe* due process analysis.

*Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 (5th Cir. 2002); *see also Transfield ER Cape Ltd. v. Indus. Carriers, Inc.*, 571 F.3d 221, 224 (2d Cir. 2009) ("[W]e have previously observed that, in general, alter egos are treated as one entity for jurisdictional purposes." (cleaned up)). Since the whole point of substantive consolidation is to shatter (or pierce) the imaginary wall between one company and its alter egos, *see In re Alico Mining*, 278 B.R. at 588 ("It is clear that this [substantive consolidation] can only be accomplished by destroying the independent legal existence of the nondebtor entity by removing its corporate shield and establishing with competent evidence that, as in this case, the [d]ebtor is nothing more than the alter ego of [the nondebtor].");  *In re Bonham*, 229 F.3d at 764 ("Substantive consolidation 'enables a bankruptcy court to disregard separate corporate entities, to pierce their corporate veils in the usual metaphor, in order to reach assets for the satisfaction of debts of a related corporation.'" (quoting *James Talcott, Inc. v. Wharton (In re Cont'l Vending Machine Corp.)*, 517

F.2d 997, 1000 (2d Cir. 1975) (cleaned up)))—and given that the Bankruptcy Court unquestionably had personal jurisdiction over No Rust (the debtor)[19]—the court also had jurisdiction to consolidate No Rust with its alter egos.

### III.    The Bankruptcy Court Had Authority to Enter a Final Order

In a two-paragraph argument, the Appellants contend (for the first time) that, because "[s]ubstantive consolidation [is] a non-statutory, extraordinary, equitable action, the [B]ankruptcy [C]ourt had only the authority to make a report and recommendation to the District Court." Initial Br. at 15. In support, they quote from *Wellness International Network, Ltd. v. Sharif*, 575 U.S. 665, 668 (2015), where the Supreme Court held that only "Article III" courts wield "the judicial [p]ower of the United States" and that "Congress may not withdraw from [them] any matter which, from its nature, is the subject of a suit at the common law, or in equity, or in admiralty." Initial Br. at 15 (citing *Wellness*, 575 U.S. at 668). Without any further explanation, the Appellants say that the Bankruptcy Court could not have relied "upon 11 U.S.C. § 105 as its source of authority to strip a third party of its assets by motion" because that authority is limited to "carry[ing] out the provisions of the Code." *Id.* at 11. (quoting *Law*, 571 U.S. at 421 (cleaned up)). We disagree.

Under 11 U.S.C. § 157, Congress vested bankruptcy courts with the authority to "hear two types of proceedings in connection with the administration of a bankruptcy estate: core proceedings and non-core proceedings." *Wortley v. Bakst*, 844 F.3d 1313, 1317–18 (11th Cir. 2017). For core

---

[19] The debtor, No Rust, commenced the underlying bankruptcy case when it filed a voluntary Chapter 11 Subchapter V bankruptcy petition on March 5, 2021. *See generally* Chapter 11 Petition. "Clearly, a party who voluntarily files a bankruptcy petition submits to the personal jurisdiction of the bankruptcy court, which has subject matter jurisdiction over all bankruptcy matters." *In re Thompson*, 2007 WL 1447897, at *5 (Bankr. E.D. Tenn. May 14, 2007); *see also In re Blumeyer*, 297 B.R. 577, 582 (Bankr. E.D. Mo. 2003) ("[B]y the filing of a voluntary petition under Title 11, the [d]ebtor submitted his assets to the jurisdiction of the bankruptcy court[.]"); *In re Yagow*, 60 B.R. 543, 545 (Bankr. D.N.D. 1986) ("[O]nce a [debtor] files a voluntary bankruptcy petition, thereby submitting to the jurisdiction of the bankruptcy court, . . . the [debtor] is deemed to have submitted himself to the bankruptcy court jurisdiction for all purposes.").

proceedings, bankruptcy courts may enter final judgments. *See Wellness*, 575 U.S. at 670 ("Congress identified as 'core' a nonexclusive list of 16 types of proceedings, § 157(b)(2), in which it thought bankruptcy courts could constitutionally enter judgment."). "Absent consent [of the parties]," however, "bankruptcy courts in non-core proceedings may only submit proposed findings of fact and conclusions of law, which the district courts review *de novo*." *Ibid.* (cleaned up).

"Core proceedings are those that are found to be 'arising under' the Bankruptcy Code or 'arising in' a bankruptcy case." *In re Robert Plan Corp.*, 777 F.3d 594, 596 (2d Cir. 2015); *see also* 11 U.S.C. § 157(b)(1) ("Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11[.]"). "Proceedings 'arising under' the Bankruptcy Code are those 'that clearly invoke substantive rights created by federal bankruptcy law.'" *In re Robert Plan Corp.*, 777 F.3d at 596. "Proceedings 'arising in' a bankruptcy case are those claims that are not based on any right expressly created by the Bankruptcy Code, but nevertheless, would have no existence outside of the bankruptcy." *Id.* at 597 (cleaned up). Put simply, "a matter is a core proceeding" if it's "the sort of case that arises only in the bankruptcy context or involves rights created by federal bankruptcy law." *Wortley*, 844 F.3d at 1318. On the other hand, "a matter is a non-core proceeding" if it's "a related case, like a tort or contract dispute, that could potentially affect the bankruptcy estate." *Ibid.*

Viewed in this proper context, substantive consolidation is unquestionably a core proceeding because "it arises only in the bankruptcy context [and] involves rights created by federal bankruptcy law." *Ibid.* As we've discussed, consolidation is a creature of a bankruptcy court's equitable powers. *See In re Reider*, 31 F.3d at 1105 (noting that "[s]ubstantive consolidation traces its roots to the Bankruptcy Act of 1898" and that, while "[t]he Act then contained no express statutory authorization for consolidation," that authority was "implied from the bankruptcy court's general equitable powers"). Plus, given that "[s]ubstantive consolidation may be sought *only* in bankruptcy," it's

"logically impossible that substantive consolidation is a . . . non-core matter." *In re Gladstone*, 513 B.R. 149, 157 n.7 (Bankr. S.D. Fla. 2014) (Kimball, J.) (emphasis added); *see also In re Petters Co., Inc.*, 506 B.R. 784, 792 n.10 (Bankr. D. Minn. 2013) (explaining that, because "substantive consolidation is uniquely a matter of bankruptcy law, and its application is limited to bankruptcy cases," a consolidation motion "is a core proceeding"). The Bankruptcy Court thus had authority to enter its final order of consolidation.

Finally, the Appellants imply that, in *Law v. Siegel*, 571 U.S. 415, 421 (2014), the Supreme Court stripped the bankruptcy courts' equitable power to order substantive consolidation because that power somehow conflicts with certain provisions of the Bankruptcy Code. *See* Initial Br. at 15 ("The bankruptcy court's reliance upon 11 U.S.C. § 105(a) as its source of authority to strip a third party of its assets by motion practice is misplaced. 'Section 105(a) confers authority to "carry out" the provisions of the Code[.]'" (quoting *Siegel*, 571 U.S. at 421). And, in their Reply Brief, the Appellants direct our attention to "three mechanisms" in the Bankruptcy Code that (they say) provide for the "incorporat[ion] of assets of non-debtor entities into the estate: 11 U.S.C. § 303, 544, and 548." Reply Br. at 9. But courts around the country (including in our District) have routinely rejected this same argument—noting *both* that *Siegel* had absolutely nothing to do with consolidation *and* that consolidation conflicts with no provision of the Bankruptcy Code. *See In re Kodsi*, 2015 WL 222493, at *2 (Bankr. S.D. Fla. Jan. 14, 2015) (Isicoff, J.) ("Ark Capital asserts that *Law v. Siegel* prohibits substantive consolidation except in instances of individual married debtors; because the Bankruptcy Code has only one specific provision for consolidation in 11 U.S.C. § 302(b), no other consolidation is possible. However, Ark Capital's argument is not persuasive. As I have pointed out many times since *Law v. Siegel* was decided, the case did not create any new law. . . . Unlike the relief requested by the trustee in *Law v. Siegel*, which sought to override specific provisions of the Bankruptcy Code, substantive consolidation does not override any provision of the Bankruptcy Code."), *abrogated on other*

*grounds by In re Ortega T.*, 562 B.R. 538, 540 (Bankr. S.D. Fla. 2016) (Isicoff, C.J.). As one bankruptcy

court explained:

> Defendants claim that *Law v. Siegel*[ ] held that the Bankruptcy Court has no inherent
> powers or authority pursuant to 11 U.S.C. § 105 to enact substantive federal common
> law where the Bankruptcy Code does not specifically permit the requested relief.
> Defendants argue that there is no specific or general provision in the Bankruptcy Code
> or Federal Rules of Bankruptcy that authorizes substantive consolidation, thus, there
> is no legal basis to order substantive consolidation of non-debtors, particularly
> individuals, under section 105 of the Bankruptcy Code . . . .
>
> Debtor has expanded the holding in *Siegel* without basis. In *Siegel*, the Supreme Court
> solely ruled that although a bankruptcy court has statutory authority to issue any order
> necessary to carry out the provisions of the Bankruptcy Code under 11 U.S.C.S. §
> 105(a), "in exercising those statutory and inherent powers, a bankruptcy court may not
> contravene specific statutory provisions" [571 U.S. at 421] . . . . The primary purpose
> of substantive consolidation is to ensure the equitable treatment of all creditors[.] The
> court is not creating or modifying substantive rights and is not contravening any
> specific statutory provision. Substantive consolidation is a long standing equitable
> remedy that is available under particular circumstances in bankruptcy cases.

*In re Owner Mgmt. Serv., LLC Tr. Corps.*, 530 B.R. 711, 722–23 (Bankr. C.D. Cal. 2015).

And that's right. In *Siegel*, the court repeated the "hornbook" rule that § 105(a) of the

Bankruptcy Code "does not allow the bankruptcy court to override explicit mandates of other sections

of the Bankruptcy Code," but it reiterated that bankruptcy courts retain their "equitable powers" so

long as those powers are "exercised within the confines of the Bankruptcy Code." 571 U.S. at 421

(cleaned up). The Court went on to hold that the bankruptcy court went beyond "the limits of

authority under § 105(a)" because it had "violated § 522's express terms when it ordered that the

$75,000 protected by Law's homestead exemption be made available to pay Siegel's attorney's fees, as

an administrative expense." *Id.* at 422. But the Supreme Court said *nothing* about substantive

consolidation—nor did it make any other comments about the extent to which § 105(a) otherwise

limits a bankruptcy court's equitable powers. *See generally id.* at 420–28. It's no surprise, then, that no

federal court has ever held that *Siegel* had any effect on a bankruptcy court's equitable power to order

substantive consolidation. In fact, every federal court to have considered the issue has said just the

opposite. *See, e.g.*, *In re Clark*, 548 B.R. 246, 252–53 (9th Cir. BAP 2016) ("The Supreme Court's ruling in *Siegel* is not applicable under these circumstances—the facts are distinguishable, and the rule of law that 'whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code' was previously set forth in *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988).")), *aff'd*, 692 F. App'x 946 (9th Cir. 2017) ("The Supreme Court's decision in *Law v. Siegel* . . . does not compel a different result. . . . Ordering substantive consolidation, however, does not contravene specific provisions of the Bankruptcy Code. While the Code does not explicitly authorize substantive consolidation, neither does the Code forbid it."); *In re AAA Bronze Statues & Antiques, Inc.*, 598 B.R. 27, 32–33 (Bankr. N.D. Fla. 2019) (Specie, C.J.) (rejecting reliance on *Law v. Siegel* since "Defendant has provided no Code section that directly addresses, much less prohibits, substantive consolidation").

We therefore reject the Appellants' suggestion that substantive consolidation conflicts with the Bankruptcy Code or that *Siegel* somehow precludes a bankruptcy court from ordering substantive consolidation.

## IV.      The Bankruptcy Court Correctly Applied Estoppel Law

The Appellants also contend that the Consolidation Order "was entered solely upon the [B]ankruptcy [C]ourt's findings in the Conversion Order." Initial Br. at 15. As the Appellants see it, "the [Consolidation] Motion simply 'parroted' the factual findings of the Conversion Order." *Ibid.* In doing this, the Appellants contend, the Bankruptcy Court misapplied the law of collateral estoppel because, "[a]s between the Conversion Order and the Sub Con Order there is no identity of parties and no identity of issues." *Id.* at 13.

Issue preclusion (also called "collateral estoppel") "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008).

Under federal common law,[20] issue preclusion has four elements: "(1) the issue at stake is identical to the one involved in the prior litigation; (2) the issue was actually litigated in the prior suit; (3) the determination of the issue in the prior litigation was a critical and necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding." *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 702 F.3d 1312, 1318 (11th Cir. 2012). We'll address each of these four elements—in the context of our bankruptcy proceedings—in turn.

### A.      Issues at Stake in the Proceedings

In its Consolidation Order, the Bankruptcy Court correctly applied collateral estoppel to the *factual* findings it had made in the earlier conversion proceeding, even as it recognized that the *legal* standards governing the two proceedings—"conversion to a Chapter 7 proceeding" on the one hand and "substantive consolidation" on the other—were different. *See* Consolidation Order at 32 ("Although the legal theory of consolidation is different than conversion, the two actions involve identical issues of fact, and the Conversion Order contains the court's factual findings on those issues."). As the Bankruptcy Court astutely noted, since "[a]ll the essential factual findings in support of consolidation ha[d] already been found," "no new evidence" was "necessary to adjudicate the issue of substantive consolidation." *Id.* at 33. And (notably) while the Bankruptcy Court applied the facts of the earlier proceeding to this consolidation action, it never suggested that the legal standard was the same—nor did it preclude the Appellants from contesting substantive consolidation on the merits. On the contrary, the Court permitted (indeed, ordered) several rounds of merits briefing on the issue

---

[20] "The preclusive effect of a federal-court judgment is determined by federal common law." *Taylor*, 553 U.S. at 891. When the judgment in question is issued by a state court, by contrast, we apply state preclusion law. *See In re Harris*, 3 F.4th 1339, 1344 (11th Cir. 2021) ("[B]ecause the default judgment against Mr. Harris was issued by a Florida court, we apply the collateral estoppel law of Florida to determine the judgment's preclusive effect." (cleaned up)).

of consolidation and considered all the *legal* arguments the Appellants advanced. *See, e.g.*, *id.* at 23 (noting that the "Target Companies only make procedural arguments" in their briefing, "despite the [c]ourt specifically requesting and providing opportunity for them to submit supplemental briefing on any and all of their substantive arguments against consolidation," and describing how the Smith Entities advanced no substantive arguments against consolidation—for instance, by never suggesting that the entities were "not in fact shar[ing] a substantial identity," that "consolidation would not be beneficial to the estate," or that the entities' "creditors [would] be unduly prejudiced by consolidation").

This distinction between the *facts* the Bankruptcy Court applied and the *legal* arguments it permitted the Appellants to raise is critical because, when collateral estoppel is used only to foreclose the re-litigation of *factual* issues, the Eleventh Circuit hasn't required an identity of *legal* issues between the two proceedings. *See, e.g.*, *In re Halpern*, 810 F.2d 1061, 1063 (11th Cir. 1987). In *Halpern*, for example, a state-court consent judgment found the debtor (Halpern) liable to the creditor (First Georgia) and ordered a decreased total payment amount "if Halpern complied with the specified payment schedule." *Id.* at 1062. "If Halpern failed to meet the payment schedule, First Georgia would be entitled to a writ of fieri facias in the amount of $337,000.00." *Ibid.* Halpern eventually filed a Chapter 7 bankruptcy petition, and First Georgia brought an action in bankruptcy court to determine the nondischargeability of Halpern's debts. *See id.* at 1063. The bankruptcy court granted summary judgment in favor of First Georgia and "entered an order declaring Halpern's debt to First Georgia nondischargeable." *Ibid.* The court "reasoned that, despite the fact that bankruptcy courts have exclusive jurisdiction to determine when debts are dischargeable, bankruptcy courts may invoke collateral estoppel to preclude relitigation of *facts* actually and necessarily litigated in state court action." *Ibid.* (emphasis added). "The bankruptcy court concluded that the *facts* admitted in the state court

judgment contained all of the elements necessary for a determination of nondischargeability . . . and that [the debtor] had made no opposing showing." *Ibid.* (emphasis added).

The district court affirmed the bankruptcy court, and the debtor appealed, arguing that both "the bankruptcy court and the United States District Court erroneously concluded that [he] was precluded by collateral estoppel from relitigating the factual determinations made by the state court." *Id.* at 1061. In affirming the bankruptcy court, the Eleventh Circuit noted that "[t]he bankruptcy court did not apply claim preclusion to the dischargeability proceedings" but rather "utilized issue preclusion to reach conclusions about the *facts* that the court would then consider as 'evidence of nondischargeability.'" *Id.* at 1063–64 (emphasis added). That was an appropriate application of issue preclusion, the court said, because "collateral estoppel may be applied to foreclose relitigation of certain *facts* in a dischargeability proceeding." *Id.* at 1064 (emphasis added). In saying so, the court rejected a similar argument to the one the Appellants raise here—that "the [legal] issues in the section 523 dischargeability are not identical to issues of fraud under Georgia law in that 'reckless disregard' is sufficient for a finding of fraudulent intent under Georgia law but insufficient to establish nondischargeability under section 523." *Ibid.* "As we indicated above," the court explained, "the 'issues at stake' in this case were the detailed *factual* findings in the state court consent judgment. The conclusion that these undisputable *facts* were sufficient to satisfy section 523(a)(2)(A) was a *legal* conclusion made by the bankruptcy court in the exercise of its exclusive jurisdiction to determine dischargeability. As such, there is no problem of identity of issues in this case." *Ibid.* (emphases added).

And our Circuit has consistently reaffirmed this basic principle. *See, e.g.*, *In re Thomas*, 288 F. App'x 547, 548 (11th Cir. 2008) ("A bankruptcy court may rely on collateral estoppel to reach conclusions about certain *facts*, foreclose relitigation of those *facts*, and then consider those *facts* as 'evidence [in a different proceeding].'" (emphasis added) (citing *Halpern*, 810 F.2d at 1064)); *Kane v. Stewart Tilghman Fox & Bianchi, P.A.*, 485 B.R. 460, 472 (S.D. Fla. 2013) (Moore, J.) (rejecting the

appellants' claim that the bankruptcy court erred by "adopt[ing] certain *factual* findings directly from [a] [s]tate [c]ourt [j]udgment" because "the [b]ankruptcy [c]ourt did not apply collateral estoppel to the [ultimate] *legal* issue . . . but only to common questions of *fact* between the bankruptcy proceedings and the [s]tate [c]ourt [a]ction" (emphases added)), *aff'd sub nom. In re Kane*, 755 F.3d 1285 (11th Cir. 2014); *cf. Harline v. Barker*, 912 P.2d 433, 443 (Utah 1996) ("[T]he minimum reach of issue preclusion beyond precise repetition of the first action is to prevent relitigation by mere introduction of cumulative evidence bearing on a simple historical *fact* that has once been decided." (quoting 18 CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4417, at 157 (1981) (cleaned up & emphasis added))).

These cases allow us to put to bed the Appellants' claim that "there is no overlap" of issues here because "the focus of a motion to convert a case from Chapter 11 to Chapter 7 is the conduct of the Debtor" while "[t]he various tests for substantive consolidation focus on the relationship of the debtor to third parties." Initial Br. at 17. As we've detailed, the Bankruptcy Court never said that the *legal* issues in the two proceedings were the same. It simply applied the *facts* it had already found in the first proceeding (conversion) to the second (consolidation) and then asked whether those *facts* satisfied the *legal* standard for the second. *See, e.g.*, Consolidation Order at 3, 6 (summarizing the "relevant factual findings" from the Conversion Order, including that, "[i]n December 2016, Smith founded Raw, LLC[,] which served as a holding company," that "in January 2017, Smith reinstated an older entity, [GES], to hold his intellectual property, including the trademark and brand licenses associated with his basalt rebar product," and that "No Rust paid the bills for at least some of GES's intellectual property and, at least once, transferred a patent to GES for no consideration"); *id.* at 14–15 (noting, "[b]ased on the [c]ourt's findings in the Conversion Order," that "Smith is the principle, majority shareholder, and president of each of [the Family] entities"); *id.* at 15 (outlining, again based on the court's *factual* findings in the Conversion Order, that "each of the Family Members operated

out of the same location, and physical assets of the Debtor were only identified by Smith walking around the Property (which holds other corporate entities' assets) and identifying inventory personally" (cleaned up)).

Take, for instance, the Bankruptcy Court's treatment of the first factor of the consolidation inquiry—in which the court determined that there would be significant "difficulty in segregating assets of the individual entities" because, as "the Court's [factual] findings in the Conversion Order" made clear, "Smith commingled No Rust's assets with those of the Family and possibly himself, regularly transferred assets between No Rust and other Family Members at his sole discretion and failed to maintain sufficient records showing the nature of those transfers and transactions." *Id.* at 15.

The Bankruptcy Court thus properly "concluded that the facts admitted in the [conversion proceedings] contained all of the elements necessary for a determination of [substantive consolidation]." *Halpern*, 810 F.2d at 1063.

### B.      The Factual Issues Were "Actually Litigated"

On the second element of issue preclusion, the Appellants never argue that the factual findings on which the Bankruptcy Court relied weren't "actually litigated." *See* Initial Br. at 15–16 (quoting the principles of estoppel by prior judgment laid out in *Cromwell v. Sac Cnty.*, 94 U.S. 351, 353–71 (1876)). They've thus forfeited any such argument. *See Campbell*, 26 F.4th at 873; *Hamilton*, 680 F.3d at 1319; *In re Egidi*, 571 F.3d at 1163; *Sapuppo*, 739 F.3d at 681. Nor could they. As the Bankruptcy Court correctly noted, "[w]hen an issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined, the issue is actually litigated." Consolidation Order at 33. And the factual findings in our case were "actually litigated," the Bankruptcy Court concluded, because they were drawn largely from *Smith's own testimony* at the conversion proceedings:

> [U]nlike in the case of a judgment entered by confession, consent, or default, where the issues are not actually litigated, there was a multi-day trial held upon the conversion motion, evidence was presented, and primarily as a result of Smith's own testimony with respect to factual matters based on his knowledge as a representative of the Target

Companies, the Court made the factual findings which support the Conversion Order and which the Trustee now seeks to apply to consolidation.

*Ibid.* And the Eleventh Circuit has repeatedly held that facts are "actually litigated" when they're taken from evidentiary hearings involving sworn testimony, cross-examination, and explicit factual findings. *See Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354, 1359 (11th Cir. 1998) ("When an issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined, the issue is actually litigated." (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 27 cmt. d (1982)); *Powrzanas v. Jones Util. & Cont. Co. Inc.*, 822 F. App'x 926, 929 (11th Cir. 2020) (finding that the "district court did not err in finding that [the plaintiff Powrzanas's] claims were barred by issue preclusion" where "[t]he dispositive issue . . . was identical to the factual issue presented in Powrzanas's two motions for a restraining order in *Powrzanas I*, the issue was actually litigated in *Powrzanas I* through briefs and two evidentiary hearings, the issue was a critical and necessary part of the *Powrzanas I* court's orders denying those motions, and Powrzanas had a full and fair opportunity to litigate the issue"); *United States v. Weiss*, 467 F.3d 1300, 1309 (11th Cir. 2006) ("The record also demonstrates that the issue was actually litigated in the prior proceeding, as evidenced by the lengthy testimony of Mr. Gladstone and others at the evidentiary hearings held[.]"); *Vazquez v. Metro. Dade Cnty.*, 968 F.2d 1101, 1106 (11th Cir. 1992) ("The factual determinations underlying the court's legal conclusion—such as the determination that an issue was actually litigated in the prior proceeding—are to be upheld on appeal unless clearly erroneous.").

## C.    The Factual Issues Were "Critical and Necessary" to the Prior Judgment

The Appellants likewise don't suggest that the Conversion Order's factual findings weren't "critical and necessary" to that prior judgment (the third element of issue preclusion). They've (again) thus forfeited any such argument. *See Campbell*, 26 F.4th at 873; *Hamilton*, 680 F.3d at 1319; *In re Egidi*, 571 F.3d at 1163; *Sapuppo*, 739 F.3d at 681. In any event, the Bankruptcy Court correctly concluded that its factual findings "were undeniably 'critical and necessary' or 'essential' to the resolution of the

conversion proceedings" because "the Court explicitly relied [on them] in entering the Conversion Order." Consolidation Order at 34. We see no basis to doubt that conclusion. *Cf. Bobby v. Bies*, 556 U.S. 825, 835 (2009) ("A determination ranks as necessary or essential only when the final outcome hinges on it.").

### D.    The Appellants Had a Full and Fair Opportunity to Litigate

The Appellants claim—as they did below—that they were "total strangers to [the] prior [Conversion] [O]rder," had no "represent[ation] in the prior process," and "had no opportunity to address factual and legal bases for merging their separate assets into the bankruptcy estate." Initial Br. at 12. We disagree. In rejecting this same argument, the Bankruptcy Court offered the following (rather compelling) observations:

> As the principal, majority shareholder, president, and representative of each of the Family Members, Smith [was] in the best (and possibly only) position to understand and represent the interests of the Family Members. To the extent that conversion may have had an impact on any of their interests as creditors, related entities doing business with the Debtor, or otherwise, it was Smith's duty to represent those interests, or hire counsel to do so, and he chose to take no action.
>
> While the Target Companies may not have formally appeared or filed claims at the time of the hearings on the Motion to Convert, they were in fact represented by Smith at the hearings, and so not only had notice of the conversion hearings but were actually in attendance (although not represented by counsel) as Smith was in attendance and testified at those hearings with respect to factual matters based on his knowledge as the representative of each of the Target Companies. It [was] incumbent on Smith to represent the interests of the Family Members, and his failure to engage counsel for the specific purpose of representing the various Target Companies was at his own peril.

Consolidation Order at 35–36. We recognize that applying "issue preclusion to nonparties [ ] runs up against the deep-rooted historic tradition that everyone should have his own day in court." *Taylor*, 553 U.S. at 892–93. Still, we can find no fault in the Bankruptcy Court's findings on this fourth element of issue preclusion.

In *Taylor*, the Supreme Court addressed the extent to which lower courts can, consistent with due process, apply collateral estoppel to a party who didn't *technically* participate in the original

proceeding. *See id.* at 891 (noting that "[t]he federal common law of preclusion is, of course, subject to due process limitations"). The case involved a petitioner who had filed a lawsuit under the Freedom of Information Act, seeking specific documents from the Federal Aviation Administration. *See id.* at 885. The petitioner's friend, Greg Herrick, "had previously brought an unsuccessful suit seeking the same records." *Ibid.* The two men had no legal relationship, and there was no evidence that the petitioner "controlled, financed, participated in, or even had notice of Herrick's earlier suit." *Ibid.* In assessing whether the petitioner should be bound by the judgment in Herrick's case, the D.C. Circuit applied its doctrine of "virtual representation," under which a nonparty would be bound by the findings of an earlier litigation on a showing of two threshold factors—"identity of interests" and "adequate representation"—and at least one of three additional factors: "[(1)] a close relationship between the present party and his putative representative, [(2)] substantial participation by the present party in the first case, or [(3)] tactical maneuvering on the part of the present party to avoid preclusion by the prior judgment." *Id.* at 889–90.

Employing this test, the D.C. Circuit concluded that the petitioner's "lawsuit under the Freedom of Information Act seeking certain documents from the Federal Aviation Administration" was precluded because "[the petitioner]'s friend, [Herrick,] had previously brought an unsuccessful suit seeking the same records." *Id.* at 885. "Herrick qualified as [the petitioner]'s 'virtual representative,'" the D.C. Circuit said, even though "[t]he two men ha[d] no legal relationship, and there [was] no evidence that [the petitioner] controlled, financed, participated in, or even had notice of Herrick's earlier suit." *Ibid.* In the Circuit's view, it was sufficient that the petitioner and Herrick were "close associates" and that Herrick had a "strong incentive to litigate" through counsel, whom the petitioner had retained on Herrick's behalf—a fact that, according to the Circuit at least, reflected the petitioner's "satisfaction with that attorney's performance in Herrick's suit." *Id.* at 890.

The Supreme Court disagreed. The Court began by outlining the six acceptable forms of "virtual representation": *first*, "a person who agrees to be bound by the determination of issues in an action between others is bound in accordance with the terms of his agreement," *id.* at 893 (cleaned up); *second*, a nonparty is bound when there are "substantive legal relationships between the persons to be bound and a party to the judgment," such as "bailee and bailor" or "assignee and assignor," *id.* at 894 (cleaned up); *third*, a nonparty may be bound when he or she "was adequately represented by someone with the same interests who was a party to the suit," such as "suits brought by trustees, guardians, and other fiduciaries," *ibid.* (cleaned up); *fourth*, a nonparty may be precluded when he or she "assumed control over the litigation in which that judgment was rendered," giving the nonparty "his day in court even though he was not a formal party to the litigation," *id.* at 895 (cleaned up); *fifth*, a nonparty may be bound when he or she is trying to "relitigat[e] through a proxy," *ibid.*;[21] *sixth*, "in certain circumstances[,] a special statutory scheme may expressly foreclose successive litigation by nonlitigants if the scheme is otherwise consistent with due process. Examples of such schemes include bankruptcy and probate proceedings . . . or other suits that, under the governing law, may be brought only on behalf of the public at large," *ibid.* (cleaned up).

Although the D.C. Circuit had justified its decision on the "adequate representation" category, it had "strayed from the meaning [precedent] ha[d] attributed to that term." *Id.* at 896. "A party's representation of a nonparty is 'adequate' for preclusion purposes," the Supreme Court explained, "only if, at a minimum, [two factors are met]: (1) the interests of the nonparty and her representative are aligned; and (2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty." *Id.* at 900. And (the Court added) sometimes "adequate representation" will require a third factor: "notice of the original suit to the

---

[21] This category includes situations where "a nonparty later brings suit as an agent for a party who is bound by a judgment." *Taylor*, 553 U.S. at 895.

person alleged to have been represented." *Ibid.* "[T]he D.C. Circuit's broad theory of virtual representation," *id.* at 898, was inadequate *precisely because* it provided no such protections, *see id.* at 898, 900–01 ("First, our decisions emphasize the fundamental nature of the general rule that a litigant is not bound by a judgment to which she was not a party . . . . Our second reason for rejecting a broad doctrine of virtual representation rests on the limitations attending nonparty preclusion based on adequate representation . . . . Third, a diffuse balancing approach to nonparty preclusion would likely create more headaches than it relieves.").

Nor (in the Supreme Court's view) did the record support preclusion under any of the six well-established preclusion categories. "[I]t [wa]s uncontested that four of the six grounds for nonparty preclusion"—one, two, four, and six—"ha[d] no application [to the facts of the case]." *Id.* at 904. Nothing indicated "that [the petitioner] agreed to be bound by Herrick's litigation, that [the petitioner] and Herrick ha[d] any legal relationship, that [the petitioner] exercised any control over Herrick's suit, or that [the FOIA] suit implicate[d] any special statutory scheme limiting relitigation." *Id.* at 905. Category three ("adequate representation") was likewise inapplicable because the record didn't support the D.C. Circuit's view "that Herrick understood himself to be suing on [the petitioner's] behalf, that [the petitioner] even knew of Herrick's suit, or that the [lower court] took special care to protect [the petitioner]'s interests." *Ibid.* As to "the fifth category: preclusion because a nonparty to an earlier litigation has brought suit as a representative or agent of a party who is bound by the prior adjudication," the Supreme Court concluded that additional factfinding was necessary. *Ibid.* Although the petitioner was "not Herrick's legal representative and he ha[d] not purported to sue in a representative capacity," the petitioner conceded "that preclusion would be appropriate" if the respondents "could demonstrate that he [was] acting as Herrick's 'undisclosed agent.'" *Ibid.* The Court thus remanded the case for further factfinding on this narrow question—though it cautioned against justifying preclusion on "[a] mere whiff of 'tactical maneuvering.'" *Id.* at 906. Instead, it instructed the

lower courts to consider "principles of agency," which "indicate that preclusion is appropriate only if the putative agent's conduct of the suit is subject to the control of the party who is bound by the prior adjudication." *Ibid.*

Our case, by contrast, fits neatly into the third *Taylor* category—"adequate representation." *See* Conversion Order at 36 ("While the Target Companies may not have formally appeared or filed claims at the time of the hearings on the Motion to Convert, they were in fact represented by Smith at the hearings[.]"). In fact, the Conversion Order satisfied all three of the "adequate representation" category's elements. *First*, "the interests of the nonpart[ies] and [their] representative [were] aligned." *Taylor*, 553 U.S. at 900. Like Smith, all of the Smith Entities had the same powerful interest in preventing the Trustee from taking over No Rust's estate. Smith, after all, controlled both No Rust and the entities—and, unsurprisingly, none of the entities ever objected to (or in any way diverged from) the positions Smith took in the conversion proceedings.

*Second*, we're satisfied that Smith "understood [himself] to be acting in a representative capacity" for the Smith Entities, and that "the [Bankruptcy] [C]ourt took care to protect the interests of the nonpart[ies]." *Taylor*, 553 U.S. at 900. With respect to the former, Smith was deposed as each company's corporate representative,[22] and he "testified at [the conversion] hearings with respect to factual matters based on his knowledge as the representative of each of the Target Companies." Consolidation Order at 36. As for the latter, although the Smith Entities were unrepresented at the conversion proceedings, that was only because they (or more likely Smith) ignored the Bankruptcy Court's explicit admonition that they retain independent counsel. *See* Nov. 22, 2021, Hearing

---

[22] *See* Notice of Taking Rule 2004 Examination Duces Tecum of Records Custodian for Raw, LLC [Bankr. ECF No. 94]; Notice of Taking Rule 2004 Examination Duces Tecum of Records Custodian for Raw Energy Materials Corp. LLC [Bankr. ECF No. 95]; Notice of Taking Rule 2004 Examination Duces Tecum of Records Custodian for Global Energy Sciences, LLC [Bankr. ECF No. 96]; Notice of Taking Rule 2004 Examination Duces Tecum of Records Custodian for Raw Materials Corp. [Bankr. ECF No. 97].

Transcript [Bankr. ECF No. 169] at 10:4–7 ("The Court: Okay. Well, Mr. Smith, you're not permitted unfortunately. These entities [(*i.e.*, the Smith Entities)] need a lawyer. Corporations cannot appear before a bankruptcy court without a lawyer, and you are not a lawyer."); *see also* Consolidation Order at 36 ("It is incumbent upon Smith to represent the interests of the Family Members, and his failure to engage counsel for the specific purpose of representing the various Target Companies was at his own peril."). Having thus disregarded the court's advice that he retain independent counsel for each of his entities at the conversion proceeding, Smith cannot now use the fact that those entities were unrepresented as a sword with which to relitigate old facts in this consolidation proceeding. We cannot imagine that the Supreme Court intended the "adequate representation" test to excuse a party's transparent gamesmanship.

*Third*, the Trustee provided adequate "notice of the [conversion proceedings] to the [entities] alleged to have been represented." *Taylor*, 553 U.S. at 900. The Appellants don't disagree that Smith— as the debtor—received proper notice of the conversion proceedings. *See* Initial Br. at 11 (arguing only that "[n]either the *Trustee*, nor any of the *Appellants* were parties to the motions which resulted in the Conversion Order" and conceding that, "[a]s of the date on which the bankruptcy court's Conversion Order was entered, . . . Global Energy Sciences, LLC *was* listed as an unsecured creditor in the Debtor's Schedules," though "[n]one of the other Appellants had notice of the bankruptcy case" (emphases added)). And, while the Smith Entities didn't receive that formal process as nonparties, "[p]ractically speaking, additional service on the Target Companies . . . would have amounted to little more than Smith receiving another envelope with identical materials." Conversion Order at 35. Again, the "adequate representation" test wasn't meant to elevate form over substance by allowing a losing party (like Smith) with full control over several affiliated entities to relitigate old issues by doffing one entity's hat and donning another's.

We also think our case meets the elements of the fifth *Taylor* category—where "a nonparty to an earlier litigation has brought suit as a representative or agent of a party who is bound by the prior adjudication." *Taylor*, 553 U.S. at 905; *see also id.* at 895 ("Fifth, a party bound by a judgment may not avoid its preclusive force by relitigating through a proxy."). Smith exercises *total control* of the Smith Entities. *See* Appellants' Designation of Issues at 1 (stating that Donald Smith is the "sole and managing member" of GES and Raw and the "sole officer and Director" of RMC and REM). And he's admitted that, through these consolidation proceedings, he hoped to relitigate the factual findings the Bankruptcy Court had made—about, for instance, the extent to which he manages each of his entities interchangeably—in the conversion proceeding. *See, e.g.*, Apr. 25, 2023, Hr'g Tr. at 21:24–22:12 ("Mr. Gleason: [T]he Court found [in its Conversion Order] that No Rust contributed assets to a transaction, and received no consideration in return, when the record only reflects a forklift went out, and a forklift came back in on the same day; that materials went out, and materials came back to replace them; that two machines that were, let's say, 1.0, were replaced by a 2.0 machines, on the same day, and yet the Court found no consideration for that transfer. We certainly will be contesting those sort of facts, because those are the facts that form the basis of the substantive consolidation, and the Court made these statements like, you know, No Rust paid the expenses for a patent."). The Smith Entities, as "nonpart[ies] to an earlier litigation"—*i.e.*, the conversion proceedings—are thus challenging consolidation as "prox[ies]" or "agent[s] of a party who is bound by the prior adjudication." *Taylor*, 553 U.S. at 895, 905; *cf. Proxy*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("1. Someone who is authorized to act as a substitute for another"); *Agent*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("2. Someone who is authorized to act for or in place of another; a representative").

Other courts have likewise held, under *Taylor*'s proxy exception, that nonparty preclusion is appropriate where one entity controls the parties to both the original and the subsequent proceeding. In *Continental Western Insurance Co. v. Federal Housing Financial Agency*, 83 F. Supp. 3d 828 (S.D. Iowa

2015), for instance, the court applied issue preclusion to the defendants' motion to dismiss because an earlier case, *Perry Capital*, had "already conclusively resolved the same claims[.]" *Id.* at 832. The court did this "even though Continental Western was not a party in *Perry Capital*," because it was nevertheless "in privity with its parent corporation, Berkley, who was a plaintiff in that case." *Id.* at 833. Berkley's own parent company, Berkley Insurance Company, was also a plaintiff in *Perry Capital. See id.* at 831. The court agreed with the defendants that "Continental Western was acting as Berkley's proxy or agent when filing this lawsuit," since "Berkley and Continental Western share the same counsel, advance nearly identical claims seeking the same relief, and are co-plaintiffs in other litigation challenging the same government action." *Id.* at 836–37. "All of these facts," the court reasoned, "support the conclusion that Continental Western's litigation strategy was subject to the control of the Berkley plaintiffs." *Id.* at 837.

This is all equally true here. The Bankruptcy Court already conclusively resolved the relevant factual issues in a prior proceeding. Again, "there was a multi-day trial held upon the conversion motion, evidence was presented, and primarily as a result of Smith's own testimony with respect to factual matters based on his knowledge as a representative of the Target Companies, the [Bankruptcy] Court made the factual findings which support the Conversion Order[.]" Consolidation Order at 33. These factual findings, in other words, have all been "actually litigated." *Pleming*, 142 F.3d at 1359. And, as in *Continental Western*, our Bankruptcy Court was right to find, based on those factual findings, that the Smith Entities were acting as Smith's proxies throughout the consolidation proceedings, since Smith and the Smith Entities "share the same counsel" and "advance nearly identical claims[.]" 83 F. Supp. 3d at 837. What's more, the Smith Entities were "in fact represented by Smith at the hearings [on the Motion to Convert]," Consolidation Order at 36, so we agree with the Trustee that the Appellants are, in "real-world fact[,] . . . completely dominated by Smith," Response Br. at 16 n.4. As in *Continental Western*, then, the evidence suggests that, throughout the course of the conversion *and*

consolidation proceedings, the Appellants' litigation strategy was subject to Smith's total direction and control. We're thus satisfied that collateral estoppel was appropriate here under the fifth *Taylor* exception to the general rule against nonparty preclusion.

We therefore agree with the Bankruptcy Court's decision to apply, in its consolidation analysis, the factual findings it made during the conversion proceedings.

\*       \*       \*

After careful review, in sum, we hereby **ORDER and ADJUDGE** that the Bankruptcy Court's Order Granting the Trustee's Motion to Substantively Consolidate [Bankr. ECF No. 257] is **AFFIRMED**.

**DONE AND ORDERED** in the Southern District of Florida on October 17, 2024.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record